ARROW SHEET METAL WORKS, INC., *v.* BRYANT &
DETWILER COMPANY.

1. CONTRACTS—CONSTRUCTION OF BUILDINGS—SUBCONTRACTS—TIME.
   Defendant general contractor had the right to direct and control
   the time and manner of doing the work covered by plaintiff's
   subcontract for roofing, sheet metal work and installation of
   metal siding on stamping plant under clause of subcontract
   providing that time was of the essence and requiring that
   work was to be done at such time or times and in such manner
   and in such quantities as may be required by defendant to meet
   its time schedule, where defendant's general contract with own-
   er might be interfered with to some extent by operations of 3
   other general contractors.

2. SAME—CONSTRUCTION OF BUILDINGS—BREACH OF SUBCONTRACT—
   CONSTRUCTION OF CONTRACTS.
   All provisions of a subcontract must be construed together in such
   manner, if possible, as to avoid conflict but if such avoidance
   is not possible, the express terms of the agreement must
   control as against implications based on reference to the plan
   and specifications contained in the general contract for con-
   struction of stamping plant, where controversy involved claimed
   breach by general contractor of his subcontract with plaintiff.

3. SAME—SUBCONTRACT—REFERENCE TO PLANS AND SPECIFICATIONS
   IN GENERAL CONTRACT—PURPOSE.
   Reference in subcontract to plans and specifications contained in
   general contract for construction of a stamping plant *held*,
   to have been made for the purpose of identifying the work to
   be done and the extent, scope, and purpose thereof.

4. SAME—REFERENCE TO AN EXTRANEOUS WRITING.
   A reference by contracting parties to an extraneous writing for a
   particular purpose makes it a part of their agreement only for
   the purpose specified.

REFERENCES FOR POINTS IN HEADNOTES
[2-7] 12 Am Jur, Contracts §§ 245, 246.

5. SAME—SUBCONTRACTS—GENERAL CONTRACTOR'S BREACH OF GEN-
ERAL CONTRACT.

Plaintiff subcontractor was not entitled to recover damages for de-
fendant general contractor's breach of provisions of its general
contract with the owner for construction of a stamping plant and
inserted therein for the benefit and protection of the latter,
where subcontract granted the general contractor the right to
direct and control the time and manner of doing the work
covered by the subcontract.

6. SAME—SUBCONTRACTS—THIRD-PARTY BENEFICIARY CONTRACT ACT.

Subcontractor was not entitled to invoke so-called third-party
beneficiary act and obtain benefit of provisions of the general
contract to which reference had been made in subcontract for
plans and specifications, where subcontract specifically pro-
vided that general contractor should have the right to direct
and control the time and manner of doing the work covered
by the subcontract and provisions which subcontractor claimed
had been breached were inserted for the benefit and protection
of the owner (CL 1948, § 691.541 *et seq.*).

7. SAME—CONSTRUCTION   CONTRACT—SUBCONTRACT—BREACHES   OF
GENERAL CONTRACT—TIME.

Defendant general contractor was not liable to plaintiff subcon-
tractor for breaches of general contract imposing duty upon
defendant to organize the project, to provide proper supervision
and co-ordination of work of the various subcontractors, to
order and arrange delivery of materials so that plaintiff might
perform its work within a reasonable time, to keep roadways
to the project free from snow, ice and other obstructions so
as to permit delivery of materials and personnel and to provide
electric current for temporary power and light in view of
specific provision of subcontract providing time was of the
essence and granting to defendant the right to direct and
control the time and manner of doing the work covered by the
subcontract.

Appeal from Wayne; Webster (Arthur), J. Sub-
mitted October 9, 1953. (Docket No. 52, Calendar
No. 45,949.) Decided November 27, 1953.

Action by Arrow Sheet Metal Works, Inc., a Mich-
igan corporation, against Bryant & Detwiler Com-
pany, a Michigan corporation, for extras claimed

due under contract and for damages for alleged breach of contract. Judgment for defendant on count for damages. Plaintiff appeals. Affirmed.

*Joel L. Bremer (Carroll C. Grigsby,* of counsel), for plaintiff.

*Wilber M. Brucker, John C. Donnelly* and *Clark, Klein, Brucker & Waples,* for defendant.

CARR, J. The question at issue in this case concerns the right of the plaintiff to prosecute an action against defendant for damages for alleged breach of contract. The facts are not materially in dispute. In 1949 the Ford Motor Company entered into general contracts, 4 in number, for the construction of a stamping plant at or near Hamburg, New York. The first of said contracts covered the foundation work, the second the structural steel work, the third the furnishing and installation of boilers and materials and labor incident thereto, while the fourth contract was let to the defendant in this case and covered practically all of what was required to be done in the completion of the structure and not embraced within the terms of the first 3 contracts.

The contract between the Ford Motor Company, hereinafter referred to as the owner, and defendant, as one of the general contractors, was executed November 17, 1949. Thereafter defendant entered into negotiations with the plaintiff and on or about February 21, 1950, a written agreement in the form of an offer and acceptance thereof was finally executed, such subcontract covering roofing, sheetmetal work, and installation of metal siding on the stamping plant. It was provided in the agreement that the work was to be done in accordance with plans and specifications prepared by named architects and engineers. Copies of such plans and specifications

were incorporated in the general contract between the owner and the defendant. They indicated in detail the manner in which the construction work was to be performed.

Under the terms of the contract between the parties to this case plaintiff was to receive the sum of $380,000, payable in monthly installments, for the work that it undertook to do. It is not disputed that such sum was paid. Plaintiff claimed, however, that it had performed certain extras at the request and for the benefit of defendant, for which it was entitled to additional compensation. The parties were unable to agree with reference to the amount to which plaintiff was entitled because of such additional items. This case was thereupon instituted, the declaration seeking recovery for the doing of the extra work not covered by the written contract and also damages based on the theory of alleged breach of contract on defendant's part. Plaintiff's right to recover additional compensation for work done was submitted to the jury under 4 special questions, in answer to which the amount of recovery on each item in dispute was specified, and judgment in plaintiff's favor was entered accordingly. From that portion of the final judgment neither party has appealed.

Plaintiff's claim for damages on the theory of breach of contract was set forth in count 4 of its declaration, which alleged that by virtue of the contract between the owner and defendant and also the contract between plaintiff and defendant it was the duty of the latter "to organize the project, to provide proper supervision and coordinate the work of the various subcontractors, and to order and arrange delivery of materials" to the end that the plaintiff's agreement might be performed within a reasonable time. It was further averred that it was defendant's duty to keep roadways leading to the construction project free from snow, ice, and

other obstructions, in order to permit delivery of materials and the movements of personnel, and that defendant was also required to provide electric current for temporary power and light so that plaintiff's tools and equipment might be operated without interruption. It was alleged that defendant failed to perform the said duties, and that because of delays resulting from such failure plaintiff's costs were increased and it was deprived of a profit that otherwise it might have earned.

The contract between plaintiff and defendant did not set forth in specific terms the duties that plaintiff claims defendant owed to it and failed to perform. In support of its position plaintiff relies on the reference in said contract to the plans and specifications as contained in the general contract between defendant and the owner. It is urged in this regard that such reference incorporated into the subcontract, for the benefit of plaintiff, certain obligations that defendant had assumed in connection with the performance of its work under the general contract. The averments of count 4 of the declaration have reference principally to the following provisions set forth in the "general conditions" contained in the general contract:

"The work shall be carried to completion with utmost speed.

"Immediately upon award of the contract, the contractor shall prepare and submit a definite progress schedule and furnish same to the owner for approval. The contractor shall execute all portions of the work in accordance with the approved schedule.

"If necessary, in order to complete the work within the time stated in the contract, or if, in the opinion of the owner, it becomes necessary, in order to maintain the progress schedule, for the contractor to work after regular hours, the contractor shall, im-

mediately upon request, work such overtime, additional shifts, Sundays or holidays, as may be required, without additional cost to the owner.   *   *   *

"Should the progress or completion of the several portions or the whole of the work be delayed as the result of fire, lightning or other casualty for which the contractor is not responsible, or should the contractor be delayed in the prosecution of the work through the fault of any other contractor employed by the owner, or because of the owner, the time of completion of such portion or portions of the work directly affected by such delay shall, unless the owner elects to terminate the contract as provided under the heading 'Termination by Owner', be extended for a period equivalent to the time lost, which period shall be determined by the owner. No such extension shall be granted unless the contractor, within 48 hours of the occurrence of the cause of such delay, notifies the owner, in writing, that such cause has occurred and makes written application for the specific extension of time claimed to be necessitated by reason of such cause.

"The contractor shall have no claim against the owner for damage, loss, expense or other compensation on account of any such delays, except as specifically otherwise provided under the heading 'Suspension of Operations.'   *   *   *

"The total electric service that the power company can make available to the project for construction purposes is 1900 KVA at 4160 volts. This service has now been installed for the foundation contractor to meet his requirements and those of the structural steel contractor.

"Any portion of this present supply of current for power and light that may be required by the general contractor, over and above the needs of the foundation and structural steel contractors, shall be obtained by him through direct negotiations with the foundation contractor.

"It shall be understood that the general contractor shall furnish, install and maintain the electric serv-

ice for temporary power and light and the distribution system required for all of the construction needs of the various trades operating under his contract and those operating under the contracts assigned to him.

"The general contractor shall also arrange to provide the necessary service for temporary power and light and distribution system required for the trades operating under the combustion engineering company contract, and the general contractor shall be reimbursed by the owner for the current so consumed at the same rate electric current is paid for by the general contractor.

"It follows, therefore, that if the total combined requirements of the general contractor, boiler contractor, foundation and structural steel contractors should exceed the total electric service available of 1900 KVA; the general contractor shall provide the excess through such means as he may devise for the satisfactory performance of his work.

"Except as mentioned above, any temporary power and light required for the trades operating under those contracts not assigned to the general contractor, shall be provided by each of the individual contractors through such means as he may devise according to his individual needs.

"Under the terms of his contract with the owner, the foundation contractor has assumed the cost of installing the incoming electric service, and has or will provide, a distribution system suitable to his needs and those of the structural steel contractor. Therefore, it shall be understood that, when the foundation and structural steel contractors have no further need for temporary power and light for their operations, the general contractor will purchase for a consideration, mutually agreed upon, the foundation contractor's right, title and interest in the electric service that has been installed and in his distribution system in so far as the latter fits the general contractor's needs.

"The general contractor shall remove all temporary installations and equipment to which he has acquired title under this provision, on completion of his contract.   *   *   *

"General contractor shall, during the entire time of the work under this contract, keep temporary construction roads and other pavements installed by the foundation contractor or under this contract, free from snow, ice or other obstructions for uninterrupted access to and from all buildings and Hamburg turnpike."

On the trial in circuit court objection was interposed to the introduction of testimony under count 4 of the declaration. After some discussion of the matter the jury was excused from the courtroom, and by permission of the trial judge a special record was made. Following the introduction of certain testimony which tended to indicate clearly the theory on which plaintiff was claiming damages, the trial judge came to the conclusion that the right to proceed under count 4 was wholly a question of law. Such question was determined adversely to plaintiff's contention. The conclusion reached was set forth in the final judgment, and plaintiff has appealed therefrom.

As before noted, plaintiff's right to recover damages under count 4 rests on the claim that because of defendant's alleged breaches of duty the completion of the contract was delayed and that, in consequence, plaintiff sustained certain losses. In view of this claim, the following provision in the contract between the parties to this case becomes significant:

*"Time is the Essence of this Order.* Work to be done at such time or times and in such manner and in such quantities as may be required by us, to meet our time schedule."

The trial judge, after listening to the proofs and arguments submitted to him, came to the conclusion that such clause was, as a matter of law, decisive of the question at issue. Appellee contends that such holding was correct. The clause quoted can scarcely be given any interpretation other than as granting to defendant the right to direct and control the time and manner of doing the work covered by the subcontract. In view of the possibility that performance by defendant of its undertaking with the owner might be interfered with to some extent at least by operations of the other general contractors, the reason for the reservation of such control is obvious. It may be assumed that the parties deemed such provision necessary for the proper protection of defendant.

The provision quoted is at variance with the claim of the plaintiff that the general conditions specified in the contract between defendant and the owner were incorporated in the subcontract to such an extent and in such manner as to impose on defendant a duty to perform them for plaintiff's benefit to the end that any delay in the performance of the subcontract, to plaintiff's damage, should not occur. All provisions of the agreement between the parties hereto must be construed together in such manner, if possible, as to avoid a conflict. If such avoidance is not possible, the express terms of the agreement must control as against implications based on the reference to the plan and specifications contained in the general contract. However, we think such reference must be regarded as having been made for the purpose of identifying the work to be done and the extent, scope, and purpose thereof.

In support of their contention counsel for defendant have cited *Guerini Stone Co.* v. *P. J. Carlin Construction Co.*, 240 US 264 (36 S Ct 300, 60 L ed 636). There the defendant had entered into a contract with

the government of the United States for the construction of a building at San Juan, Porto Rico. This was followed by the execution of a subcontract with Guerini, later assigned to plaintiff corporation, for the furnishing of certain materials and the installation thereof. The agreement made reference to the drawings and specifications of the architect. It was specifically provided, however, that defendant would furnish all labor and materials not included in the contract in such manner as not to cause delay in the progress of the work. In the event of failure to perform such obligation, the subcontractor was entitled to compensation. The general contract under which defendant was proceeding gave the government the right to suspend operations, but the subcontract contained no provision protecting defendant in the event that such action was taken. The government exercised its right, as a result of which plaintiff was prevented from continuing under its subcontract in the manner contemplated thereby. Suit for damages was brought. Defendant sought to rely on the provisions of its general contract, apparently on the theory that the plaintiff was bound thereby. In rejecting such contention, it was said in part:

"From what was said by the trial judge it would seem that he labored under the impression that the supervising architect of the treasury was a party to the subcontract. This is not the case; he did not sign the agreement, and his name was inserted solely in the capacity of architect or referee. And although the subcontract very plainly imports that it covers only a part of the work of constructing the building, and that the Carlin Company was the general contractor, it contains no clause incorporating into itself the provisions of the principal contract, or even in terms referring to that instrument. The subcontractor's work was agreed to be done

according to drawings and specifications, 'copies of which have been delivered to the subcontractor.' These copies were not produced, nor was their non-production accounted for. The parties seem to have assumed that the drawings and specifications of which copies were to have been delivered with the subcontract were identical with those that formed a part of the general contract; and we adopt that assumption.

"The reference in the subcontract to the drawings and specifications was evidently for the mere purpose of indicating what work was to be done, and in what manner done, by the subcontractor. Notwithstanding occasional expressions of a different view (see *Shaw* v. *First Baptist Church of Winona,* 44 Minn 22, 24 [46 NW 146]; *Avery* v. *Ionia County Supervisors,* 71 Mich 538, 546, 547; *Stein* v. *McCarthy,* 120 Wis 288, 295 [97 NW 912]), in our opinion the true rule, based upon sound reason and supported by the greater weight of authority, is that in the case of subcontracts, as in other cases of express agreements in writing, a reference by the contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement only for the purpose specified. *Woodruff* v. *Hough,* 91 US 596, 602 (23 L ed 332); *Neuval* v. *Cowell,* 36 Cal 648, 650; *Mannix* v. *Tryon,* 152 Cal 31, 39 (91 P 983); *Moreing* v. *Weber,* 3 Cal App 14, 20 (84 P 220); *Short* v. *Van Dyke,* 50 Minn 286, 289 (52 NW 643); *Noyes* v. *Butler Bros.,* 98 Minn 448, 450 (108 NW 839); *Modern Steel Structural Company* v. *English Construction Company,* 129 Wis 31, 40, 41 (108 NW 70).

"In the present case, not only was the reference to the drawings and specifications for a limited purpose, but the subcontract, by the express terms of its eleventh paragraph, placed upon the general contractor (defendant) the obligation to 'provide all labor and materials not included in this contract in such manner as not to delay the material progress of the work.' Applying this to the facts of the case,

defendant agreed to furnish the foundation in such manner that plaintiff might build upon it without delay. This is inconsistent with any implication that the parties intended that delays attributable to the action of the owner should leave plaintiff remediless.

"We therefore hold that the general contract was not admissible in evidence against plaintiff, unless for the purpose of showing (if, indeed, it did show) what drawings and specifications were referred to in the subcontract; and that the rulings of the trial judge holding plaintiff bound by the provisions of the general contract, so as to be obliged to submit to delays resulting from the action of the government, were erroneous."

The decision in *Avery* v. *Ionia County Supervisors,* 71 Mich 538, cited in the *Guerini Stone Company Case, supra,* is not at variance with the proposition that the specific language of a subcontract controls, as between the parties thereto, notwithstanding the provisions of the agreement between the general contractor and the owner. It was there held that plaintiff, a subcontractor, was not entitled to recover damages because of failure on the part of the defendant board, and its committee, to require the general contractor to furnish a bond sufficiently broad in its provisions to protect plaintiff in his dealings with the general contractor. The controlling issue in the case was the construction of a statute of the State requiring that officials letting contracts for the erection of public buildings, or other public works, should require security for the payment of labor performed or materials furnished in carrying out the project. It was held that plaintiff subcontractor was not within the classes of persons sought to be protected by the statute (PA 1883, No 94).

In the case at bar the contract between the parties must be regarded as controlling. *Strom-Johnson Construction Co.* v. *Riverview Furniture Store,* 227

Mich 55, 67. In the face of the specific provision above quoted, plaintiff is in no position to claim the right to recover damages from defendant because of delays resulting from the alleged failure of defendant to perform certain duties that it had assumed in its general contract with the owner for the benefit and protection of the latter. Such provision likewise negatives the suggested claim that plaintiff is entitled to invoke the so-called third-party beneficiary act, PA 1937, No 296 (CL 1948, § 691.541 *et seq.* [Stat Ann 1953 Rev § 26.1231 *et seq.*]). Without reference to any other possible question in this respect, it is apparent that the provisions of the general contract on which plaintiff seeks to rely were not considered by the parties to the subcontract as having been made for plaintiff's benefit. Had they taken such view of the situation, it is scarcely conceivable that they would have incorporated in their agreement a specific provision giving to defendant the right to direct and control the time and manner of performance.

In support of its claim, plaintiff has cited *Perine v. Standfield,* 107 Mich 553; *Interstate Construction Co.* v. *United States Fidelity & Guaranty Co.,* 207 Mich 265; *Morgan* v. *Goddard,* 239 Mich 174, and other cases of like nature. In none of these cases, however, was there a factual situation presented analogous to that in the case at bar. In each it was definitely recognized that parties to a contract are bound thereby, and in each the contract involved was interpreted to carry out the intention of the parties as expressly stated or reasonably implied. The cases cited may not be regarded as supporting the right of plaintiff in the instant case to prosecute its claim for damages under count 4 of its declaration, in view of the express language in the contract relating to time and manner of performance.

In view of the conclusion above indicated, it is

unnecessary to discuss certain provisions of the general contract tending to support defendant's theory as to the intention of the parties thereto. We are in accord with the finding of the trial court, and the judgment entered is affirmed, with costs to defendant.

DETHMERS, C. J., and ADAMS, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.