**Charles REED, Plaintiff,**

v.

**John C. LONG, Marshall Long, and Robert W. Long, individually and a co-partnership d/b/a Long Construction Company, Defendants and Third-Party Plaintiffs,**

v.

**JOHNS–MANVILLE SALES CORPORATION, Third-Party Defendant.**

**Civ. No. 18755.**

United States District Court
E. D. Michigan, S. D.
April 17, 1962.

Charfoos, Gussin, Weinstein & Kroll, Detroit, Mich., for plaintiff.

Snider, Feikens, Dice & Thompson, Detroit, Mich., for defendants.

Vandeveer, Haggerty, Garzia & Haggerty, Detroit, Mich., for third-party defendant.

KAESS, District Judge.

Plaintiff, Charles Reed, a workman employed by Johns-Manville Sales Corporation, was injured when a hoist on which he stood was lowered without warning. Johns-Manville Sales Corporation then was performing work at the site of a Ford Motor Company project at Wixom, Michigan, pursuant to a contract it had executed with Long Construction Company, the general contractor.

Plaintiff brought suit against Long Construction Company for the injuries sustained which, he alleged, were caused by the negligence of Long Construction Company, one of whose employees operated the hoist. Thereupon, Long Construction Company brought in Johns-Manville Sales Corporation as a third-party defendant upon a claim of indemnity. The rights of plaintiff have been determined by stipulation, and there is now pending only the outcome of the third-party action.

The motions before the court place at issue the duty of Johns-Manville Sales Corporation, pursuant to the contract, to indemnify Long Construction Company against any claims for personal injury connected with the performance of the work, even though based upon negligence of Long Construction Company. To decide them, we must turn to the contract. In its first two sections, the work to be performed by Johns-Manville Sales Corporation is identified by reference to the General Conditions, Drawings, and Specifications of the contract between Ford Motor Company and Long Construction Company. In sections three and four there are provisions governing such matters as insurance, taxes, clean up, and overtime. In section five the working relationship between contractor and subcontractor is defined by reference to the General Conditions, Drawings, and Specifications of the general contract; yet some matters covered by the general contract are again treated by independent provisions of this section. The difficulty in ascertaining the intent of the parties arises from such double treatment.

Reference to the general contract in section five is made in the following words:

"SECTION 5. The Contractor and Subcontractor agree to be bound by the terms of the General Conditions, Drawings and Specifications as far as applicable to this subcontract, and also by the following provisions:

"The Subcontractor agrees:

"(a) To be bound to the Contractor by the terms of the General Conditions, Drawings and Specifications, and to assume toward him all the obligations and responsibilities that he, by those documents, assumes toward the Owner.

\* \* \* \* \* \*

"The Contractor agrees:

"(k) To be bound to the Subcontractor by all the obligations that the Owner assumes to the Contractor under the General Conditions, Drawings, and Specifications, and by all the provisions thereof affording remedies and redress to the Contractor from the Owner."

It is clear that the responsibility to indemnify the owner against claims to personal injury connected with the performance of work under the general contract, even though based upon the owner's negligence, has been assumed by the contractor by the indemnity provision of the general contract:

"The Contractor shall be exclusively responsible for and shall bear all loss and/or expense and/or damage and/or claims therefor against the Contractor and/or the Owner, resulting from bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons and/or on account of damage to or destruction of property, including loss of use thereof (except as otherwise specifically provided in the section hereof entitled 'Owner's and Contractor's Responsibilities—Fire and Certain Other Risks'), arising out of, or in connection with the performance of all work called for by this Contract, including all work assigned to the Contractor thereunder, based upon the alleged negligence of: (a) the Contractor or any of its employees, agents or servants; (b) any Subcontractor or any of such Subcontractor's employees, agents or servants; (c) and/or the Owner or any employees, agents, or servants of the Owner."

It is equally clear that a parallel responsibility has been assumed by the subcontractor by subdivision (a) of section five. There should be no difficulty in the process of thought outlined. A mental substitution, in the indemnity provision, of the words "contractor," "subcontractor," "subsubcontractor," and "subcontract," for the words "owner," "contractor," "subcontractor," and "contract" respectively should be sufficient.

■ The thrust of the argument made by counsel for Johns-Manville Sales Corporation is that the provision in subdivision (f) of section five, an undertaking by the subcontractor "to indemnify and save harmless the Contractor against any loss or damage to property suffered by anyone through any act or omission on the part of the Subcontractor or anyone directly or indirectly employed by him," would be redundant unless intended to express fully its responsibility to indemnify Long Construction Company. They cite cases requiring a clear and unmistakable expression of intent to indemnify another against the results of his own negligence to support their argument. Speaking generally, the expression of such intent must be plain but there is no policy that prevents giving it effect. E. g., Buffa v. General Motors Corporation, 131 F.Supp. 478 (E.D. Mich.1955). The performance of construction work exposes the men doing the work to hazards existing at the site, and the person for whom the work is done may seek protection against tort claims in connection with the work by a broad indemnity agreement. It is essential only that the nature of the agreement be made clear and unmistakable.

Here the General Conditions, Drawings, and Specifications of the contract between Ford Motor Company and Long Construction Company are made part of the subcontract for the purpose of identifying the work to be performed, but they also are intended to serve in defining the relationship between Long Construction Company and Johns-Manville

Sales Corporation. In this respect, a Michigan case cited in argument may be distinguished. In Arrow Sheet Metal Works v. Bryant & Detwiler Co., 338 Mich. 68, 61 N.W.2d 125 (1953), the defendant had entered into a contract with Ford Motor Company to do construction work. The plans and specifications, indicating in detail the manner in which the work was to be performed, were incorporated in the general contract. Plaintiff, a subcontractor, sued for the recovery of additional compensation, on the ground that the defendant had failed to perform its responsibility of coordination and supervision, a responsibility arising under the general contract, so that plaintiff's work could not be performed within a reasonable time. The court held that the reference to the plans and specifications contained in the general contract was made only for the purpose of identifying the work to be done. It also expressed the rule that would apply if the reference had been made for the purpose of defining the relationship of the parties:

"All provisions of the agreement between the parties hereto must be construed together in such manner, if possible, as to avoid a conflict. If such avoidance is not possible, the express terms of the agreement must control as against implications based on the reference to the plan and specifications contained in the general contract." (338 Mich. at 76, 61 N.W.2d at 129)

To the extent that the independent provisions of the subcontract conflicted with any parallel that might be drawn from the general contract, we would not hesitate to give such independent provisions controlling force, but here we do not have a conflict, only an implication that the independent provision fully expressed the intent of the parties.

More in point is Frommeyer v. L. & R. Construction Co., 261 F.2d 879, 69 A.L.R. 2d 1040 (3d Cir., 1958). There the question was whether the amount to be paid to a subcontractor was subject to reduction where the owner, the Government, had exercised its right to make changes in the plans and specifications that eliminated certain work. The parties did intend their responsibilities to be determined by reference to the general contract, and they included a specific provision in the sub-contract on the matter of extra work:

"Extra work is to be performed by you as directed by us or the U. S. Engineers and such work shall be subject to the approval of the U. S. Army Engineers as to performance and amount and time of payment."

This might be thought redundant, as the general contract contained a broader provision:

"3. Changes and Extras.—The contracting officer may at any time, in writing, and without notice to the sureties, order extras or make changes in the drawings and/or specifications of this contract providing such extras or changes are within the general scope thereof. If any such extra or change causes an increase or decrease in the amount due under this contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accordingly."

It might be argued that the specific provision ought to be read as a full expression of intent of the parties, but the court applied the broad language of the general contract and allowed an adjustment in the amount to be paid under the subcontract. The decision of the Third Circuit was sound. Where reference to the general contract is made for the purpose of defining the responsibilities of the parties and there is no conflict between the provisions of the general contract as applied to the parties and the provisions they have made independently, all should be given effect.

Therefore, the motion of Long Construction Company for summary judgment should be granted, and the motion of Johns-Manville Sales Corporation for partial summary judgment denied.