DÍAZ & MOREY, INC., Plaintiff and Appellee, *v.* ENRIQUE BÁEZ ET AL., Defendants and Appellants.

No. 87. Decided February 26, 1963.

*D. Guerrero Noble* for appellants. *A. Castro Fernández* and *F. Castro Amy* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Appellants Enrique Báez and Juan Lube were awarded by the Housing Authority of Puerto Rico the execution of the project "La Playa" in Arecibo, Puerto Rico, identified with No. UR PR 5-5, by a bid of $94,857.65. Later appellants subcontracted to appellee Díaz & Morey, Inc., the electrical work of said project and to that effect the parties signed a letter-contract on August 12, 1955, in the following terms:

"DÍAZ & MOREY, INC. AND ASSOCIATES
CONTRACTORS ELECTRICAL ENGINEERS

August 12, 1955

Messrs. Báez & Lube
Engineers-Contractors
Hato Rey, Puerto Rico

Gentlemen:

Confirming our conversation of today with Mr. Enrique Báez, we promise to carry out the electrical work of the project in Arecibo, of the Housing Authority of Puerto Rico pursuant to our quotation of July 14, 1955, for the sum of $12,500, excluding all concrete work that might be necessary.

Our work is subject to the drawings and specifications of the Housing Authority.

The conditions of payment shall be the same established in the contract for the project with the Authority.

Cordially yours,
DÍAZ & MOREY, INC.
(Sgd.) M. Morey
M. Morey-Treasurer."

Appellee received $10,000 under said subcontract and, when it was denied the balance of $2,500 it filed a complaint against appellants and the Fireman's Bond & Indemnity Co., the firm which had furnished the payment bond in relation with the project. It alleged that they had finished the electrical work pursuant to the specifications, that the same has been accepted by the aforesaid Authority and by the Puerto Rico Water Resources Authority and requested that appellants be ordered to pay it $2,500 which they still owed, plus $500 for attorney's fees. Appellants raised the defense that the subcontract in question required that the work be realized pursuant to the plans and specifications of the Housing Authority and that the conditions of payment would be the same established in the principal contract; that appellee failed to execute work worth $2,100, which amount the aforementioned Authority deducted from appellants and that, on the other hand, the latter carried out work for $900 which was supposed to be carried out by appellee, which makes a total of $3,000; and by virtue thereof, in case it were decided that appellee's work was agreed at the sum of $12,500, appellants counterclaimed the aforesaid amount of $3,000 and requested the dismissal of the complaint and the granting

of the counterclaim, ordering appellee to pay appellants the sum of $500.

The District Court, San Juan Part, on May 31, 1960 dismissed the complaint in this case and imposed costs and $150 attorney's fees on appellee, refusing to provide anything whatsoever respecting the claim of $900 for the work carried out by appellants and which corresponded to appellee. The aforesaid court concluded that the conditions of payment in the main project of "La Playa" were on the basis of unit work executed, that is, that the final liquidation would be made on the basis of the work actually performed; that the subcontract of August 12, 1955 required that the electrical work of the project be executed for the sum of $12,500 "... subject to *the plans and specifications of the Authority*..." and that "the conditions of payment ... *would be the same established in its contract for the project with the Authority*"; that the conditions of payment between the contracting parties were the same as those imposed by the Housing Authority on appellants; that the witness Osvaldo Hidalgo, chief engineer of the aforesaid Authority, showed that a reduction of work amounting to $2,153.48 had been made from the original estimate of the electrical part of the project and that appellee performed additional work not contemplated by the original estimate for the sum of $65; that the appellee did not show that it had performed work for $12,500; that the parties agreed that their manner and conditions of payment were based on the work actually done and that the parties were bound and subject to the final liquidation made by the aforesaid Authority without taking into consideration the partial advanced payments received by appellants, as well as by appellee, as provided by the specifications, citing to that effect § 108 concerning payments to contractors for the project "La Playa" of the general conditions of the main contract between appellants and the Authority in question.[1]

---

[1] The English text of § 108 of the General Conditions of the aforesaid main contract reads as follows:

Appellee appealed from that judgment to the Superior Court, San Juan Part, but appellants did not appeal from the decision of the District Court which refused to make any provision respecting their claim for work performed which corresponded to appellee. The Superior Court, by judgment of May 11, 1961 reversed the judgment appealed from and rendered another ordering appellants to pay appellee the sum claimed of $2,500, plus costs, and the sum of $200 for attorney's fees. The aforesaid court decided that the District Court erred in dismissing the complaint in this case, pursuant to the interpretation given to the subcontract by appellants, because that interpretation is manifestly untenable; that "there can be no doubt that the parties agreed to a lump sum, which was specific and determined by the subcontracted work. To give the last paragraph of the subcontract the interpretation sought by appellees and with which the District Court was in agreement would mean (1) to disregard the price expressly agreed upon, and (2) to set up in the subcontract, by way of interpretation, a different price—the unit price of the original contract—which could not have been the intention of the parties because both exclude each other. It is impossible to disregard what was expressly agreed upon and to interpolate in the subcontract what it does not state: that the unit price of the contract with the Housing Authority were incorporated therein. The only sensible interpretation which may be given the last paragraph of the subcontract

---

"——(a) . . .
——(b) Monthly or partial payments made by the Local Public Agency to the Contractor are monies advanced for the purpose of assisting the Contractor to expedite the work of construction. All material and completed work covered by such monthly or partial payments shall remain the property of the Contractor and he shall be responsible for the care and protection of all materials and work upon which payments have been made. Such payments shall not constitute a waiver of the right of the Local Public Agency to require the fulfillment of all terms of the Contract and the delivery of all improvements embraced in this Contract complete and satisfactory to the Local Public Agency in all details."

is that appellant would receive the advanced payments, for the account of the price agreed upon, in the same manner agreed by appellees in their contract with the Housing Authority."

The reversal of the judgment of the District Court in this case is not based on the fact that it erred in its findings of fact but that it did not correctly interpret the provisions of the two contracts involved in this case.

The electrical part of the main contract respecting the project "La Playa" is described in the printed specifications which is part of the contract. The Authority pointed out in said form the different items of the work, the amount of material and equipment estimated, and provided therein several blanks for the bidder to fill out with his quotations for unit prices of equipment and material, including labor, materials, bonds, insurance, general expenses, and profit, pursuant to the aforesaid. Appellants' proposal for the electrical work amounted to $14,673.50, on the basis of the amounts estimated for equipment and material. After the final inspection and acceptance of the work, the inspector of the Authority measured the amount of each item of work and prepared a final estimate for the unit price proposed and accepted by the Authority. As a result thereof, according to the testimony of appellant Enrique Báez, and the final liquidation of the project introduced in evidence, there were five alterations respecting the electrical contract, that is:

(1) Respecting item No. 38, the Authority estimated in its specifications 3,000 linear feet of copper wire No. 2 WP, which appellants quoted at the rate of 20 cents per foot. The final computation gave 1,440 linear feet, so that the price of this item was reduced to $288, that is, that from appellants' proposal for this item of $600, the Authority deducted $312.

(2) Respecting item No. 39, the Authority estimated in its specifications 850 linear feet of wire No. 4 WP which ap-

458

pellants quoted at the rate of 13¢ per foot. The final computation showed that 1,350 feet were used, so that appellants received $175.50 under this item, that is, $65 in excess of their original estimate of $110.50.

(3) Respecting item No. 40, the Authority estimated in its specifications 7,800 linear feet of copper wire No. 4 HD, without insulation, which appellants quoted at 12¢ per foot. The final computation showed that only 786 feet were used, so that appellants' price was reduced from $936 to $94.32, that is, by the amount of $841.68.

(4) Respecting item No. 41, the Authority estimated in its specifications 400 linear feet of wire No. 6 WP and appellants quoted at the rate of 13¢ per foot. In view of the fact that the final computation showed that only 192 feet were used, appellants' price was reduced from $52 to $24.96, that is, by the amount of $27.04.

(5) And, lastly, respecting item No. 42, the Authority estimated in its specifications 5,300 linear feet of cable No. 6 DB and appellants quoted this item at the rate of 83¢ per foot. But since the final computation showed that only 4,128 feet were used, appellants' estimate was reduced from $4,399 to $3,426.24, that is, by $972.76.

The total amount of these reductions amounts to $2,153.48 from which the increase of $65 under item No. 39 should be subtracted, so that the net amount deducted from the total price quoted by appellants which amounts to $14,673.50 for all the electrical items, is the sum of $2,088.48. Since the parties admitted that appellee performed the work to the satisfaction of the aforesaid Authority and that it was accepted by the latter, we must inevitably decide, by a mere arithmetical computation based on the facts introduced in evidence, that appellants have received or are entitled to receive as final price for the item of the electrical work, the net amount of $12,885.02. It is evident, besides, that the reduction in the items to which we have referred is not due to changes re-

quired by the Authority which resulted in the performance of less work but that the Authority overestimated the requirement of material in items Nos. 38, 40, 41, and 42, and underestimated it in item No. 39, so that under the unit price system agreed upon in the principal contract, the Authority accomplished the work specified at a lesser cost and at a lower price from appellants' view point.

Now then, how can these final computations affect the quotation of $12,500 submitted by appellee which performed the aforesaid electrical work under its subcontract of August 12, 1955?

The letter-subcontract of August 12, 1955 provides that *"Our work is subject to the drawings and specifications of the Housing Authority"* and that *"The conditions of payment shall be the same established in the contract for the project with the Authority."* (Italics ours.)

 It is a common practice to subcontract different parts of construction contracts related with projects as the one involved herein. Usually, these subcontracts refer to the plans and specifications of the principal contract in the sense that the work subcontracted will adjust to same. It has been repeatedly held that reference in a construction contract to an extraneous writing, for a particular purpose makes it a part of the agreement only for the purpose specified. *Guerini Stone Co.* v. *P. J. Carlin Construction Co.,* 240 U.S. 264 (1916). See CORBIN, Contracts, § 549, 1960 ed. The plans and specifications undoubtedly indicate the nature of the work and the form and manner of performing it and have no relation to nor affect in themselves the price quoted. *Edward E. Morgan Co.* v. *United States,* 230 F.2d 896 (C.A. 5, 1956); *Arrow Sheet Metal Works* v. *Bryant & Detwiler Co.,* 61 N.W.2d 125 (Mich. 1953); *Moses* v. *Edward H. Ellis, Inc.,* 72 A.2d 856 (N.J. 1950); *Noyes* v. *Butler Bros.,* 108 N.W. 839 (Minn. 1906). The conditions of payments can only refer to the form and manner of making advanced partial

payments, since a unit price was not agreed upon in the sub-contract but, on the contrary, a lump sum was agreed upon for the entire work, so that the price quoted by the contractor in this case could not be subject to adjustments on the basis of the final computation provided by the principal contract.

In the negotiation of the subcontract, appellants, who had already assumed the obligation on the basis of unit price, did not clarify the situation as they could have done, presumably because the lump sum of $12,500 of the subcontract was less than that of $14,673.50 quoted by appellants for the electrical work, on the basis of their unit prices, so that the latter were able to assume that since the estimates of the Authority were reasonable, they would obtain a substantial profit in the subcontracting of the electrical part of the work. Appellee, on the other hand, who was familiar with the conditions of payment, knew that the price quoted by appellants was per unit and chose to quote a lump sum because the estimate it made of its probable costs for performing the work undoubtedly allowed it.

In order to maintain that the price of the subcontract is subject to the unit price of the principal contract, appellants speculate on the position appellee would have taken if the Authority would have increased the amount of work to be performed—this infers that the amount of work was actually reduced—and they conclude that in case of such increase, appellee's position would be different from the one taken at present, so that instead of claiming a lump sum as it does in the case at bar, it would be claiming that the price of the subcontract is actually per unit. This argument has no merit because it stems from an erroneous basis. In the case at bar the Authority did not reduce the amount of work to be performed. What did occur was that for the performance of the electrical work specified by the Authority, less material was used than the one it estimated, and since the price quoted in the principal contract was per unit, the Au-

thority could readjust it. If the amount of material used to perform the work specified had exceeded the estimates of the Authority, then the price calculated per unit would have exceeded the price quoted in the principal contract, but appellants would have been unable to collect the increase not exceeding 25 per cent of the original price of the contract, by express provision of paragraph 9 of the Instructions to the Bidders, which is part of the principal contract.[2] Since the price of the subcontract was a lump sum for the performance of the work specified, then appellee had no right whatsoever to claim from appellants the resulting additional price.[3] On the contrary, the Authority had the power to make changes in the work by means of revisions in the plans, for the purpose of adding or omitting work. If this would have occurred, the total price of appellants as well as that of appellee would have been subject to readjustment through negotiation [4] be-

[2] Paragraph 9 of the Instructions to Bidders states in its English text:
 "The Unit prices for each of the several items in the Proposal of each Bidder shall include its prorata part of overhead on profit and be such that the whole of the unit prices will represent a balanced Bid. Any Bid not conforming to this requirement may be rejected as informal. The special attention of all Bidders is called to this provision, for should conditions make it necessary to revise the quantities, no limit will be fixed for such increased or decreased quantities nor extra compensation allowed, provided the net monetary values of all such additive and substractive changes in quantities of such items of work (i.e., difference in cost) shall not decrease the original contract price by more than twenty-five (25) per cent, except for work not covered in the Working Drawings and Technical Specifications as provided in the Section 109—CHANGES IN THE WORK under GENERAL CONDITIONS, PART 1."

[3] Textwriter MANRESA, in vol. X, p. 924 of his work on the Spanish Civil Code, upon analyzing § 1593 equivalent to § 1485 of the Civil Code of Puerto Rico—31 L.P.R.A. § 4126—states the following: "Precisely one of the characteristics implied in the lease contract for works by adjustment or lump sum is that it is aleatory, since there is always something contingent in the amount of the utilities which the contractor intends to obtain. When the contract is being made, its special nature has already been taken into account, since it can not be concealed that between the plan or project and the budget and the actual performance of the work, the most exact agreement does not always exist."

[4] Section 1485 of the Civil Code in its final part states that the lump sum contractor may ask a raise in price "when any change increasing the

tween the parties whether on the basis of lump sum or on the basis of cost-plus-limited basis. Section 109 of the General Conditions of the aforesaid principal contract specifically provides this. *Cf. Farber Electric* v. *Professional Realty Corporation*, 85 P.R.R. 441 (1962). But the record shows that the Authority did not require such additions nor provided deductions in the work to be performed. Consequently, we must conclude perforce that the reduction of $2,153.48 in the price of the work was due solely to the fact that the final computation showed the use of an amount of material less than that estimated in relation with the performance of the total work specified. Since it likewise stems from an erroneous basis, there is no merit in the allegation that if appellee's position were correct to the effect that a lump sum was agreed upon in the subcontract, if the Authority reduced the work in $2,500, appellee would gain that amount, and if it increased the work in that amount, appellants would benefit from same. The result upon applying the aforesaid § 109 would have been very different, as we have shown, and would have prevented a situation as the one alleged herein.

It is argued that if the quotation of the subcontract was for a lump sum, appellee would have refused to perform the additional work that it carried out for $65 under the aforementioned item No. 39. This argument also lacks merit since under item No. 39 no additional work whatsoever was performed since the record shows that the Authority did not issue change orders nor revision of plans nor negotiated the

---

work should be made in the plans, provided the owner has given his authorization." MANRESA, *op. cit.* at p. 925 comments on this rule: "This increase in price does not issue from the nature of the contract, but from the actual novation that the parties have introduced in same, of their own will in agreement, since we already see that the Code requires the indispensable requisite that the owner has given his authorization, which in concurring with the proposal of the architect or contractor, is no other than a formula of consent." In spite of the fact that the foregoing concerns the relation between a lump sum contractor and the owner, the same rules regulate the relation between the lump sum subcontractor and the one who subcontracted a determined work.

price corresponding to the change as provided by the aforesaid § 109 of the General Conditions of the principal contract. Unlike the case of the other readjusted items, the final computation showed herein that more material was used and for that reason the Authority readjusted the price of the item, granting appellants an increase of $65 in said price which could be withheld by appellants and which appellee could not claim under its subcontract. It concerned the utilization of more material than that originally estimated to perform the same work specified and not a requirement of the Authority under the aforesaid § 109. Therefore, appellee could not make any claim and could not refuse to perform additional work under said item.

Besides, there is another reason which shows that the unit price of the original contract could not bind appellee. It should be observed that the total price quoted by appellants, calculated on the basis of their quotations per unit and the estimates indicated by the Authority in its bidding form, amounted to $14,673.50, while the price of the subcontract for the same work was $12,500. Necessarily, therefore, if there were unit prices in the subcontract they would have had to be lower than those of the principal contract. Then, when price readjustment is made in items Nos. 38, 39, 40, 41, and 42 it is carried out pursuant to the unit prices quoted by appellants to add up to $14,673.50 as total price of the electrical part of the project. Appellants then seek that appellee should be responsible for the whole of such readjustment when it should be fairly liable for no more than the proportional part attributable to its quotation of $12,500. Obviously this is impossible, because it can not be justified under any stipulation of the subcontract nor is there any unit price whatsoever stipulated under the subcontract which could be applied in just proportion to appellee's quotation. An interpretation in the sense that a readjustment calculated on the basis of the unit prices of a higher quotation may be deducted from a lower quotation in the absence of an

464

express agreement to that effect, is not a just and realistic construction of the contractual relations between the parties in this litigation.

In view of the foregoing analysis, we conclude that appellee quoted a lump sum in its subcontract and by virtue thereof the price readjustments pursuant to the final computation of the work were the exclusive risk of appellants.

The judgment rendered by the Superior Court, San Juan Part, on May 11, 1961, will be affirmed.

