The Patent Scaffolding Co., Inc., a Corporation, Plaintiff, v. Standard Oil Company of Indiana and Arthur G. McKee and Company, Defendants and Third-Party Plaintiffs-Appellees.

Standard Oil Company of Indiana and Arthur G. McKee and Company, Third-Party Plaintiffs-Appellees, v. Johns-Manville Sales Corporation, a Corporation, Third-Party Defendant-Appellant.

Gen. No. 65–6.

Fifth District.

March 1, 1966.

Oehmke, Dunham, Boman & Leskera, of East St. Louis, for Johns-Manville Sales Corporation, defendant and third-party defendant-appellant.

Green and Hoagland, of Alton (James K. Almeter, of counsel), for defendants and third-party plaintiffs-appellees.

EBERSPACHER, J.

This is an action originally brought by The Patent Scaffolding Company, Inc., a corporation, plaintiff to recover for damage to its patented scaffolding when two catalytic tanks, a reactor and a regenerator, fell with the scaffolding around them on December 31, 1958. The suit was brought by The Patent Scaffolding Company against Standard Oil Company of Indiana (hereinafter referred to as Standard), the owner of the premises, at Wood River, Illinois, on which the tanks were being constructed, Arthur G. McKee & Company, hereinafter referred to as McKee & Company, the general contractor, Chicago Bridge & Iron Company, a subcontractor, and Johns-Manville Sales Corporation, (hereinafter referred to as Johns-Manville), a subcontractor of McKee & Company, alleging negligence against each defendant. Following a trial before the court without a jury, judgment was rendered in favor of the plaintiff against Standard and McKee & Company for the sum of $15,481.82 and costs of suit. The court found the issues in favor of the defendants, Chicago Bridge & Iron Company and Johns-Manville. That judgment against Standard and McKee & Company has now become final.

Both Standard and McKee & Company had filed their third party actions against Johns-Manville; the court deferred decision on the third party actions pending the trial of the original case, but subsequently on the strength of the evidence in that case, and briefs filed by both parties, found in favor of Standard and McKee & Com-

30

pany, third party plaintiffs and against Johns-Manville, the third party defendant, and denied the motion for summary judgment of Johns-Manville against Standard and McKee & Company. The judgment, from which Johns-Manville has perfected its appeal, is for the sum of $15,481.82, plus interest from date of judgment and court costs, together with an allowance of $1,275 to third party plaintiffs for attorney fees and the sum of $75 for expenses. No questions are raised on the pleadings except the court's actions with respect to the motions for summary judgments, and the amount of damages awarded is not questioned.

In May 1958, McKee & Company had forwarded an offer in the form of a purchase order to Johns-Manville wherein Johns-Manville was to perform certain insulation work, sheet metal work, etc., and was required to furnish "all necessary labor, materials, tools and equipment, scaffolding erected and dismantled, warehouse and change office facilities, as will be required to insulate field erected pressure vessels," which Johns-Manville accepted. The accepted order also contained the following pertinent provisions:

> "You agree to assume liability, be responsible for and indemnify and save harmless ourselves and the owner, for any liability for death or injury to any person or persons or for any property damage or loss of use thereof resulting from or in connection with performance of the work specified."
> "You will assume the full responsibility for and hold ourselves and the owner harmless from any loss or damage to tools and equipment used by the workmen and/or your sub-contractors."

Johns-Manville in September contracted with The Patent Scaffolding Company to furnish and erect the scaffolding necessary to perform the insulation and sheet metal work, and entered into a subcontract with J. H.

31

Walters Co. to perform the sheet metal work. On December 31, 1958, McKee & Company in conjunction with Standard, was testing the tanks for leaks by filling them with water, when the tanks collapsed, doing extensive damage to the scaffolding, for which The Patent Scaffolding Company has recovered the $15,481.82 judgment against Standard and McKee & Company. At the time of the collapse no Johns-Manville men were working on the job, but four employees of J. H. Walters Co., Johns-Manville's subcontractor, were using the scaffolding in performance of the sheet metal work.

Johns-Manville in prosecuting this appeal from the judgment in the third party action, contends that it is not liable to Standard and McKee & Company because the contract does not indemnify the third party plaintiffs for their own negligence; contending that the quoted indemnity provisions do not encompass liability except for the work that Johns-Manville contracted to do, and that the indemnity provisions of the contract do not clearly show the intention of Standard and McKee to protect themselves from their own acts of negligence nor an intention of Johns-Manville to assume those obligations, as required by the authorities. Appellant points out that Johns-Manville did nothing to affect the strength of the structure that fell, for as the evidence shows, there was no possibility of their operation in applying the insulating blankets affecting the structural strength or stability of the pressure vessels, and that the collapse of the units and the damage to the patent scaffolding resulted solely from the negligence of the owner, Standard, and the general contractor, McKee & Company, and it was so adjudicated when Patent Scaffolding Company was awarded judgment against Standard and McKee & Company and was denied recovery against Johns-Manville.

█ The public policy reasons which validate and make desirable an indemnification provision as indemnifying against the indemnitee's own negligence are well ex-

32

pressed in United States Steel Corp. v. Emerson-Comstock Co., 141 F Supp 143 (ND Ill) when the court said:

"While there are early cases in some states expressing a public policy against indemnifying a tort feasor for his own negligence it is today well established that the parties may so contract. Modern legal theory does not ignore the desirable objective of accident prevention which motivated the earlier decisions. But it finds nothing in the financial arrangements by which the business community through insurance and indemnity agreements allocates losses, inconsistent with that objective. The one on whom the contract imposes the liability has the same incentive to prevent the losses. Increased premiums and increased cost of services or materials act to deter the insured or indemnitee in the long run. At the same time society benefits through the spreading of the burdens of these unfortunate events and business does not have to risk the uncertainties of uninsured or unindemnified losses."

"Once it is determined that such agreements are to be deemed perfectly legitimate business arrangements, the only issue is that of determining whether the parties intended that the negligence of the indemnitee be a covered risk. For the leading cases applying Illinois and Indiana law in construing indemnity agreements to determine whether the language used should be fairly construed as encompassing the indemnitee's negligence, see Insurance Co. of North America v. Elgin, J. & E. Ry. Co., 7 Cir, 229 F2d 705; Chicago & N. W. R. Co. v. Chicago Packaged Fuel Co., 7 Cir, 1950, 183 F2d 630, 632; Russell for Use of Continental Casualty Co. v. Shell Oil Co., 1949, 339 Ill App 168, 89 NE2d 415. In each of these cases it was held that language used was broad enough to include the risk of the indemnitee's

negligence although there was no express reference to that risk. . . ."

In that case the indemnitor agreed:

"To provide all proper safeguards in performing the work, to save harmless and defend American Bridge Company from and against all suits, actions, legal proceedings, claims, demands, damages, costs, expenses and attorney's fees, in any manner caused by, arising from, incident to, connected with or growing out of the performance of this contract."

The court observed that the language in the indemnification agreement was all-inclusive and indemnified against even the indemnitee's own negligence. Judge Hoffman, in discussing the intent to be found in such inclusive language used by sophisticated business concerns, observed that "Businessmen do not draft contracts using such all-embracing language if they have any such unexpressed reservations (as exempting the negligence of the indemnitee) in mind." (141 F Supp at 145.)

Appellant contends that Westinghouse Elec. Elevator Co. v. LaSalle Monroe Bldg. Corp., 395 Ill 429, 70 NE2d 604, is the leading case in Illinois and latest reported expression on this subject by our Supreme Court. We consider the indemnification agreement in the Westinghouse case to be distinguishable from the one we have before us. In the Westinghouse case the indemnification clause was expressly limited to acts or omissions of the indemnitor, whereas in the instant case the indemnification clauses are broad and contain no such limitation.

The identical contention as is here made by Johns-Manville was considered and rejected by the court in Russell v. Shell Oil Co., 339 Ill App 168, 171, 172, 89 NE2d 415, where the court said:

". . . Plaintiff states that the leading case bearing upon the question before us is Westinghouse

34

Electric Elevator Co. v. LaSalle Monroe Building Corp., supra, and contends that that case supports its position. The Westinghouse Co. case, in our judgment, is not an authority in support of plaintiff's position. The indemnification provision in that case provided (p 432):

" 'The contractor further agrees to indemnify and hold the owner, the owner's employees and agents, the Architects and Engineers, and the City of Chicago, wholly harmless from any damages, claims, demands or suit by any person or persons arising out of any acts or omissions by the Contractor, his agents, servants or employees in the course of any work done in connection with any of the matters set out in these specifications, and the contractor shall carry at his own expense insurance in a company satisfactory to the owner to cover the aforesaid liabilities.' "

In Russell v. Shell Oil Co., supra, cited in United States Steel Corp. v. Emerson-Comstock Co., supra, an independent contractor was engaged by Shell to paint a light pole. While an employee of the contractor was on the pole in performance of this work, the pole collapsed. The indemnification agreement in the contract between Shell and the contractor was:

"Contractor shall hold Shell harmless from any and all claims for injury (including death), to persons (including contractor's agents and employees) or damage to property (including contractor's property) resulting from or arising in connection with any of contractor's operations, shall defend any such claim asserted or suit brought against Shell thereon, and shall pay any judgment against Shell resulting in any such suit; provided, however, that Shell shall have the right, at its option, to participate in any

35

such litigation, without, however, relieving contractor of its obligations."

The court ruled that this provision was sufficiently broad to protect Shell from its own negligence. In so ruling, the court said, at 339 Ill App 172:

"In the instant case, as appears from the complaint, Russell, the nominal plaintiff, was employed under a contract to paint certain light poles at one of defendant's gas stations and among other things he was obligated to paint the particular light pole involved in the accident, and John Campbell, his employee, was in the act of painting at the time of the accident. It seems clear that the injury to Campbell arose in connection with the 'contractor's operations.' As defendant argues, the contract includes all accidents 'resulting from or arising in connection with any of contractor's operations'; that 'the indemnifying agreement is expressed in clear and explicit language and the intention of the parties is indicated in unequivocal terms.' There is also force in the contention of defendant 'that negligence of either party does not enter into the case, because the injury to the employee (Campbell) resulted from or arose in connection with one of the contractor's operations against which he agreed to hold defendant harmless.' We agree with the opinion of the trial court that the indemnity agreement constituted a complete defense to plaintiff's cause of action."

██ ██ While appellant cites numerous Illinois cases [1] holding that an indemnity contract will not be construed as indemnifying one against his own negligence unless

---

[1] Russell v. Shell Oil Co., supra, Northern States Co., Inc. v. A. Finkl & Sons Co., 8 Ill App2d 419, 132 NE2d 59, and Newburg Const. Co. v. Fishback, Moore & Morrissey, Inc., 46 Ill App2d 238, 196 NE2d 513.

such a construction is required by clear and explicit language of the contract, which we agree is the Illinois rule of strict construction, we find that rule is qualified in each of those cases, and that each of them held that clauses similar to those we have here were sufficient to meet the test of clarity and unequivocal language; holding that the contracts were not ambiguous; and unless a contract is ambiguous none of the so-called "rules of construction" will be applied to vary its clear meaning. De Tienne v. S. N. Nielsen Co., 45 Ill App2d 231, 233, 234, 195 NE2d 240; Newburg Const. Co. v. Fishback, etc., Inc., 46 Ill App2d 238, 245, 196 NE2d 513; Gay v. S. N. Nielsen Co., 18 Ill App2d 368, 374, 152 NE2d 468.

In De Tienne v. S. N. Nielsen Co., supra, a subcontractor agreed as follows:

> "The subcontractor shall indemnify and save the Owner, Architect and General Contractor harmless against any and all claims for damages to persons, caused directly or indirectly or occasioned by the execution of the work included in this order . . . ."

In that case at page 234 the court said:

> ". . . Courts are not authorized to make contracts for the parties but must construe them as written. A contract must be given a fair and reasonable interpretation, and from the entire language used and considered in the light of the circumstances under which it was made, the court must ascertain the intent of the parties . . . .
>
> . . . . . .
>
> "A contract is to be construed as a whole, given meaning and effect to every provision and word, if possible, since it will be presumed that everything in the contract was inserted deliberately and for a purpose. . . ."

37

In the De Tienne case two of the subcontractor's employees were injured due to the negligence of the general contractor. The same contention was made there that Johns-Manville is making here, namely, that it was the negligence of the owner and not the execution of the work which caused the injury, and the indemnification provisions should thus not be applicable. To this the court retorted (45 Ill App2d at 236) :

> ". . .) The subcontractor) agreed to assume, full responsibility for injuries for which the execution of its work presented a stage upon which causal agencies could act.
>
> "The injuries to O'Shaughnessey and De Tienne . . . were occasioned by their being on the job, doing the work called for by Gateway's contract. Unless they were working for Gateway, there would have been no opportunity for their injuries to have taken place."

The same is true in the instant case. The damage to the property was occasioned by its being erected and used to enable the performance of the work specified in the contract. Had the scaffolding not been erected for this purpose, there would have been no opportunity for it to have been damaged.

In 175 ALR 37, it is said:

> "While the Courts as a rule are eager to limit the application of indemnity clauses so as to exclude coverage where the indemnitee is negligent, there are still quite a number of decisions upholding the application of indemnity clauses in such situations. Despite all the rules of interpretation discussed above, it cannot be stated, as a general principle, that an indemnity clause which does not expressly exclude

coverage where the indemnitee is negligent will not be held to apply in such a case."

"Where the language clearly indicates the intention of the parties that the agreement shall include negligence, the Courts will give effect to such intention despite their inclination to construe the agreement strictly against the indemnitee. Thus, where the indemnitor agreed to hold the indemnitee harmless for all loss or damages 'arising from any cause or for any reason whatsoever,' the agreement was held to include damage occasioned by the indemnitee's own negligence. And the same result was reached under a clause indemnifying the indemnitee for 'any loss by accident or otherwise.' "

In Moses-Ecco Co. v. Roscoe-Ajax Corp., 320 F2d 685, 687, the Circuit Court of Appeals, District of Columbia said:

"Losses incurred by Roscoe-Ajax through its own negligence are not specifically included, and Moses-Ecco urges here, as it did below, that no intention to include such losses 'is otherwise clearly and unequivocally revealed.'

"We accept the principle that where, as here, the agreement does not specifically refer to losses incurred by the indemnitee's own negligence, the intent to cover such losses must otherwise plainly appear from the agreement . . . . 'No particular form or words are needed but the intent to waive negligence must be clear'. . . .

"The District Court concluded that the language of the indemnification agreement in the present case was so broad and sweeping as to plainly reveal an intent to encompass losses incurred in whole or in part by the negligence of the indemnitee. . . . We think the view of the District Court is correct."

The bulk of reported decisions from other jurisdictions are in accord with the Illinois rule.[2] As noted in United States Steel Corp. v. Emerson-Comstock Co., supra, the Illinois law follows "the overwhelming weight of modern authority with respect to the law applicable to a suit by an indemnitee for losses occasioned by the indemnitee's own negligence."

It is interesting to note that in Reed v. Long v. Johns-Manville Sales Corp., 204 F Supp 16 (E Dist Mich, S Div), the same procedure was followed in that case as is

---

[2] Payne v. National Transit Co., 300 F 411, where the court said, "It is true that the courts have said that in order to indemnify against the indemnitee's negligence, the language must be clear and unequivocal; but I do not understand that the indemnifying contract must contain express words against negligence." Stern v. Larocca, 49 NJ Super 496, 140 A2d 403, where it is said, "By the overwhelming weight of authority, something less than an express reference in the contract to losses from the indemnitee's negligence as indemnifiable will suffice to make them so if the intent otherwise sufficiently appears from the language and circumstances." Jordan v. City of New York, 3 App Div2d 507, 162 NYS2d 145, where the court said, "There exists the requirement, however, that the contract express a clear and unequivocal intent to indemnify a party against his own negligence. This does not mean, in order to warrant a construction that it was so intended, that the contract must contain express language referring to the negligence of the indemnitee." Metropolitan Paving Co. v. Gordon Herkenhoff & Associates, 66 NM 41, 341 P2d 460, where the court said, "Perhaps the 'ultimate' unequivocal expression would have been to add 'regardless of negligence on the part of the City or its engineer.' However, the better reasoned cases do not require such a phrase when, as here, the intent to cover all damages arising by reason of the construction of the work is clearly manifest." Mitchell's, Inc. v. Friedman, 157 Tex 424, 303 SW2d 775, in which the court said, "It is not necessary, therefore, for the parties to say in so many words that they intend to protect the indemnitee against liability for negligence. An obligation to hold harmless from claims, liability or damages resulting from a specific operation or instrumentality will be enforced according to its terms even though the indemnitee may thereby be relieved of the consquences of his own negligence."

40

used here, and with the same Third-Party Defendant. Judgment had been entered in favor of Reed, and against Long, Defendant and Third-Party Plaintiff. The negligent Defendant and Third-Party Plaintiff sought to recover against Johns-Manville, Third-Party Defendant, on the basis of an indemnity provision very similar to those involved here. The court sustained the same contentions that appellees make here, i. e., that Johns-Manville Sales Corporation was liable on the indemnification provision even if it was established that the injury was occasioned by the negligence of the Defendant and Third-Party Plaintiff.

█ The first part of the indemnification agreement agrees to save McKee and Standard from any liability for any property damage. But the only manner foreseeable when the parties executed the agreement by which McKee or Standard could become liable for damages would be for at least one of them to be at fault or negligent. As was said in Northern Pac. Ry. Co. v. Thornton Bros. Co., 206 Minn 193, 288 NW 226, 227, if this sort of agreement were not applied to the negligence of the indemnitee, "there would be but little remaining purpose of the promise of indemnity." Accord: Stern v. Larocca, 49 NJ Super 496, 140 A2d 403, 409 (which cited Russell v. Shell Oil Co., 339 Ill App 168, 89 NE2d 415, with approval). It thus must follow that when Johns-Manville agreed to indemnify McKee and Standard against any liability they might incur for damages, it agreed to indemnify them against liability caused by negligence, for this is the principal basis upon which liability could arise. Progressing further into the indemnity agreement, Johns-Manville agreed to assume full responsibility for and hold the contractor and owner harmless for any loss or damage to tools and equipment used by your (Johns-Manville's) workmen or subcontractors. There is no limitation that any damage to tools or equipment must occur in connection with the work or within any

41

other special limitation; and since the same contract required Johns-Manville to furnish the scaffolding, it must have been the equipment referred to in the indemnifying agreement. We are unable to comprehend how permissive use of the scaffolding by the owner or general contractor could relieve Johns-Manville of its indemnity.

We conclude that the indemnity provision was intended to, and did cover acts of negligence of the indemnitees, and affirm the judgment of the Circuit Court of Madison County.

Judgment affirmed.

GOLDENHERSH and MORAN, JJ., concur.