CELEBREZZE, Senior Circuit Judge.
 

 In this diversity action, Roger J. Au & Son, Inc., defendant-appellant, appeals from a decision of the District Court for the Eastern District of Michigan finding it liable to plaintiff-appellee, Atlas Concrete Pipe, Inc., for breach of a contract for the supply of steel reinforced concrete pipe. Atlas filed this suit over a decade ago, claiming that Au had failed to pay on the contract. Au counterclaimed charging Atlas with delays and defects in the pipe supplied. After several years of proceedings, including three trials, the district court granted summary judgment for Atlas on the issue of liability and assessed damages.
 
 Atlas Concrete Pipe, Inc. v. Roger J. Au & Son, Inc.,
 
 467 F.Supp. 830 (E.D.Mich.1979). We reverse the summary judgment on liability and remand the case for a trial on the merits.
 

 I.
 

 In early 1968, the Oakland County Department of Public Works submitted four specific contracts for bids for sewer construction projects. Prior to the contract bid date, Atlas, a manufacturer of concrete pipe, sent price information to the contractors who had obtained copies of the sewer project plans. As the low bidder, Au was awarded one of the contracts for the Clinton-Oakland Sewage Disposal System. On July 2, 1968, after Oakland County had formally awarded the contract to Au, Atlas sent the defendant a revised price list for purposes of negotiating a contract.
 
 [1]
 

 
 *907
 
 Between July 2 and July 15, 1968, representatives of the two companies met and discussed the terms of the prospective contract. At this meeting, Atlas assured Au that it could deliver 600 feet of pipe per day at the jobsite. Moreover, Atlas informed Au that it had to finance its operations with borrowed capital. In order to minimize its financing expenses, Atlas would require payment within two days after Oakland County made payments to Au. On July 15, 1968, the parties incorporated these provisions, the July 2 price list, and a requirement that the pipe “meet the specifications for the project as drawn by the owner [the Oakland County Department of Public Works]” into a written contract. The effect of this clause was to incorporate Oakland County’s specifications into the Atlas-Au contract.
 

 Construction commenced in August, 1968 and Atlas began supplying pipe to Au. In the course of construction, Au discovered defects in the pipe which necessitated repairs. Although Atlas initially delivered pipe at the contract rate of 600 feet per day, it later reduced its delivery rate. to match Au’s installation rate; the final shipment was not made until August, 1970, approximately twenty months after Atlas was obligated to complete delivery. Au failed to pay the outstanding open account indebtedness for the delivered pipe. Furthermore, the installed pipe was defectively manufactured
 
 [2]
 
 and failed Oakland County’s infiltration — exfiltration tests.
 
 [3]
 

 On October 6, 1970, Atlas brought this contract action, alleging that Au had failed to pay for pipe which Atlas had manufactured and delivered and that Au had failed to install the pipe at the contract rate. Au counterclaimed and answered, alleging that Atlas failed to deliver the pipe at the contract rate, to remove excess pipe from the jobsite, and to supply pipe which complied with the project’s quantity and quality specifications. Atlas filed three separate motions for partial summary judgment addressed to Au’s counterclaims and defenses. On October 16, 1973, approximately one month before trial, the district judge granted the three motions for summary judgment. On November 13, 1973, the district judge entered the partial summary judgment order, denied a motion for reconsideration, and started the trial which was confined to the question of damages. The summary judgment ended Au’s counterclaims and defenses, disposing of the liability issue altogether. After trial, the district judge died before rendering a decision, leaving the litigation unresolved.
 

 On March 15, 1974, before another district judge could make a final decision, Atlas filed for reorganization under Chapter X of the Bankruptcy Act. The district court assigned to handle the case,
 
 sua sponte
 
 and without explanation, transferred the action to the bankruptcy court. Au opposed the transfer, and sought to return the case to the district court on the grounds that the bankruptcy court lacked jurisdiction. Au made unsuccessful interlocutory appeals to the district court from the bankruptcy court’s refusal to set aside the partial summary judgment entered by the original district court and from the bankruptcy court’s refusal to transfer the action to the district court for lack of jurisdiction. Pursuant to the parties’ stipulations in April, 1976, the case was tried in the bankruptcy court on the basis of the transcripts from the earlier trial and some additional documentary evi
 
 *908
 
 dence.
 
 [4]
 
 The bankruptcy court made findings of fact and on October 18, 1977, entered judgment in favor of Atlas for $525,-789.31. The bankruptcy court found Au liable based on the original district court’s grant of summary judgment and determined damages based on the outstanding open account indebtedness, Au’s breach of an implied promise to install the pipe at the rate of 600 feet per day, and consequential damages stemming from interest paid by Atlas for working capital required because of Au’s failure to pay the outstanding open account indebtedness.
 

 Au appealed the bankruptcy court’s decision to the district court. On March 6,1979, the district court, in a
 
 de novo
 
 review, granted partial summary judgment against Au based on the original district court’s determination of liability, recomputed the bankruptcy court’s assessment of damages, and entered judgment in favor of the plaintiff for the reduced amount of $452,001.86. Au appeals the summary judgment against its counterclaims, as well as the district court’s decisions concerning damages and jurisdiction.
 

 II. '
 

 The initial issue is the propriety of the district court’s granting of partial summary judgment against Au. This issue is considered first because Au’s counterclaims were its sole defenses; the partial summary judgment, therefore, disposed of Au’s defenses at the outset. Atlas filed three motions for partial summary judgment seeking to dismiss Au’s counterclaims which alleged that Atlas failed to deliver pipe at the contract rate, to remove excess pipe from the jobsite, and to supply pipe which met the project’s quantity and quality specifications. The original district court granted summary judgment and dismissed Au’s counterclaims, finding that the qualitative defects in the pipe supplied did not cause the pipeline to fail the infiltration — exfiltration tests and that the project’s quantitative requirements for manhole T’s were not enforceable against Atlas because of indefiniteness in the contract terms.
 

 Summary judgment is appropriate only where no genuine issue of material fact remains to be decided and the plaintiff is entitled to .judgment as a matter of law.
 
 See Willetts v. Ford Motor Co.,
 
 583 F.2d 852, 855 (6th Cir. 1978);
 
 Felix v. Young,
 
 536 F.2d 1126, 1130 (6th Cir. 1976); Fed.R. Civ.P. 56(c). A court may not resolve disputed questions of fact in a summary judgment decision,
 
 see United States v. Articles of Device ... Diapulse,
 
 527 F.2d 1008, 1011 (6th Cir. 1976), and if a disputed question of fact remains, the district court should deny the motion for summary judgment and proceed to trial.
 
 [5]
 

 See Felix
 
 v.
 
 Young, supra,
 
 at 1030;
 
 Bohn Aluminum & Brass Corp. v. Storm King Corp.,
 
 303 F.2d 425, 427 (6th Cir. 1962).
 

 Au contends that the district court should not have granted summary judgment on the liability issues because the court had to resolve disputed questions of fact. Our review of the record leads us to conclude that Au is correct and that these issues must be decided in a trial on the merits. The district court improperly granted the plaintiff’s first two motions for summary judgment which concerned the delivery of allegedly defective pipe and the failure of the sewage system to meet the infiltration — exfiltration specifications.
 
 [6]
 
 
 *909
 
 The district court granted summary judgment even though a clear factual dispute existed as to the cause of the failure to meet the contract specifications. The district court observed that “the failure of the line to meet the infiltration — exfiltration specifications ... can as much be the result of improper installation as of actual infirmities in the pipe itself.” Where such a factual dispute remains, summary judgment is improper and the district court should afford the parties a full trial on the merits.
 
 [7]
 

 Furthermore, the district court judge erred in granting partial summary judgment because he based his decision on the relative credibility of the witnesses. In order to determine whether defective manufacture or installation caused the pipeline to fail the infiltration-exfiltration tests, the district court weighed conflicting testimony. The district court observed that “as between which of the two causes was more likely to have been responsible for the failure ... we observe only that in contrast to the pipe supplied by plaintiff which was inspected and certified by Michigan Testing Engineers, defendant’s superintendent in charge of the installation of the pipe had never installed pipe of the diameter and length involved in the Clinton-Oakland project prior thereto.” Where the district court must assess the relative credibility of witnesses, the case is particularly inappropriate for summary judgment and requires a full hearing on the merits.
 
 See Willetts v. Ford Motor Co.,
 
 583 F.2d 852, 855 (6th Cir. 1978);
 
 Conrad v. Delta Air Lines, Inc.,
 
 494 F.2d 914, 918 (7th Cir. 1974); Notes of the Advisory Comm, on 1963 Amendment to Rule 56, Federal Rules of Civil Procedure. Genuine issues of material fact were present; the district court should have denied the motions for summary judgment and proceeded to trial.
 

 The district court also improperly granted Atlas’s third motion for summary judgment which concerned the delivery of an insufficient number of manhole T’s to the jobsite. Au asserted that Atlas only delivered 57 manhole T’s of the 152 required for the project and thus required Au to manufacture or acquire an additional 95 manhole T’s. Atlas contended that it supplied as many manhole T’s as it was capable of furnishing and that the failure of the contract to specify a quantity term for manhole T’s made that portion of the contract unenforceable. Au responded that the purchase order was a unit-price requirements contract obligating Atlas to supply the total quantity requested and, alternatively, that the total quantity of manhole T’s required was ascertainable from the project plans and specifications incorporated into the contract.
 

 Au argued that Atlas was obligated to deliver the total number of manhole T’s
 
 *910
 
 needed for the project because the purchase order was actually a unit-price requirements contract. Under such a contract, Atlas would have to provide the necessary manhole T’s at the price per unit stated in the contract. The district court rejected Au’s unit-price theory because the contract as a whole failed to reflect a unit-price requirements agreement. Only the quantity terms for the five manhole T’s were absent; the parties specified quantities for the twenty-three sizes of pipe required. Because the purchase order did not provide any evidence of an intention to create a unit-price requirements contract, the district court’s rejection of this theory appears warranted.
 

 The district court,' however, should not have granted summary judgment on Au’s argument that the purchase order incorporated the project plans and specifications, including the necessary number of manhole T’s. Under Michigan law, where a written contract incorporates the terms of a separate written instrument, the instruments are construed together as the agreement of the parties.
 
 See Charles J. Rogers, Inc. v. Michigan,
 
 36 Mich.App. 620, 194 N.W.2d 203, 207 (1971). The dispute raises a factual issue as to the intent of the parties to include the quantity specifications in the project plans.
 
 [8]
 
 Such a genuine dispute over a material fact requires a full trial rather than a decision based on summary judgment.
 
 See e.g., Fitzsimmons v. Best,
 
 528 F.2d 692 (7th Cir. 1976);
 
 Luick v. Graybar Elec. Co.,
 
 473 F.2d 1360 (8th Cir. 1973); 6 Pt. 2 Moore’s Federal Practice Par. 56.17 [41.-1]. Because we remand for a new trial on liability, we need not decide the sundry damages issues which will necessarily be a function of the liability determined at trial.
 

 III.
 

 Because Au contends that the original district court erred in transferring this case to the bankruptcy court, we must determine which court has proper jurisdiction to hear the matter. Resolution of this issue turns on the jurisdictional reaches of the bankruptcy and trial courts.
 

 There is a distinction between proceedings in bankruptcy and district court: a bankruptcy proceeding is less formal and more expeditious than a full trial in a district court.
 
 See
 
 2 Collier on Bankruptcy Par. 23.02[2] (14th ed. 1976). Proceedings in bankruptcy are summary, rather than plenary, in nature. Summary jurisdiction to adjudicate controversies depends on whether the bankrupt had actual or constructive possession of the debt claimed at the time of filing of the petition in bankruptcy.
 
 Thompson v. Magnolia Petroleum Co.,
 
 309 U.S. 478, 481, 60 S.Ct. 628, 629, 84 L.Ed. 876 (1940). This issue of possession requires an examination of the dispute to determine whether the defendant’s claims are real and substantial or “so unsubstantial and obviously insufficient, either in law or fact, as to be plainly without color or merit and a mere pretense.”
 
 In re Cadillac Brewing Co.,
 
 102 F.2d 369, 370 (6th Cir. 1939).
 
 See Harrison v. Chamberlain,
 
 271 U.S. 191, 194-95, 46 S.Ct. 467, 468-69, 70 L.Ed. 897 (1926);
 
 Willyerd v. Buiidex Co.,
 
 463 F.2d 996, 999 (6th Cir. 1972). Where a defendant presents an adverse, substantial claim and does not consent to a summary proceeding, the bankruptcy court may not exercise its summary jurisdiction
 
 [9]
 
 and the
 
 *911
 
 district court must afford the defendant a plenary form of hearing.
 
 [10]
 

 Our analysis of the dispute as to liability convinces us that Au’s claims are sufficiently adverse to warrant a trial in the district court and not in the bankruptcy court. Au contends that the liability arguments in its counterclaims raised substantial adverse claims. Atlas asserts that the district court’s summary judgment orders disposed of Au’s defenses and thus the bankruptcy court was only required to liquidate the contract damages. Our decision to remand this case for a new trial indicates that Au has substantial claims as to liability. Moreover, the vigorous and protracted litigation and the lower courts’ careful and detailed adjustment of the level of damages indicates that the defendant has colorable claims as to damages. The presence of substantial claims in this litigation preclude the bankruptcy court from exercising its jurisdiction. The existence of adverse claims concerning liability and damages requires a plenary proceeding; accordingly, we must remand this case to the district court for trial.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . The parties dispute whether the July 2, 1968 letter was an offer. The district court found that the letter was an invitation to negotiate a contract since the letter merely commenced serious negotiations between the parties. Because we dispose of this case on the summary
 
 *907
 
 judgment issue, we need not reach this question.
 

 [2]
 

 . The parties agree that some defective pipe was delivered to the jobsite. For instance, the deposition of Mr. Robert Bell, Au’s job superintendent, indicates that some pipe had improper tapers on the bell and spigot, the pipe was out of round by more than the required Vioth inch tolerance, the pipe had irregular flow lines, the concrete was defective, and the pipe had defective joints. The critical issue is whether this collection of defects caused the pipeline to fail to perform to specifications.
 

 [3]
 

 . The infiltration — exfiltration test measures the amount of seepage occurring over a pipeline. The evidence before the trial court indicates that the entire sewage line failed to meet the infiltration — exfiltration specifications of the project plans and the contract.
 

 [4]
 

 . The wisdom of conducting a trial solely on the basis of a written record in a complex bankruptcy proceeding has been questioned.
 
 See In re Clemens,
 
 472 F.2d 939, 941 n.1 (6th Cir. 1972).
 

 [5]
 

 . The district court should be reluctant to dispose of a complex case on summary judgment and should do so sparingly where a party might be denied the opportunity to develop fully his case at trial.
 
 See e.g., Tee-Pak, Inc. v. St. Regis Paper Co.,
 
 491 F.2d 1193, 1196 (6th Cir. 1974);
 
 Hart v. Johnston,
 
 389 F.2d 239, 241-42 (6th Cir. 1968); S.
 
 J. Groves & Sons v. Ohio Turnpike Comm'n,
 
 315 F.2d 235, 237-38 (6th Cir.),
 
 cert. denied,
 
 375 U.S. 824, 84 S.Ct. 65, 11 L.Ed.2d 57 (1963).
 

 [6]
 

 .The district court determined that the infiltration — exfiltration specifications applied to the entire sewer line rather than to the individual sections of pipe and concluded that Au was not entitled to damages for repairs necessary to bring the line within the required infiltration
 
 *909
 
 specifications. The parties agree that the pipe was defective,
 
 see
 
 note 2,
 
 supra.
 
 The infiltration-exfiltration test failure indicated that errors occurred in the manufacture or installation of the pipe. Because the parties dispute the cause of the failure, a trial on the merits is necessary.
 

 [7]
 

 . Appellee relies on
 
 U.S. Fibers, Inc. v. Proctor & Schwartz, Inc.,
 
 358 F.Supp. 449 (E.D.Mich.1973), aff
 
 'd,
 
 509 F.2d 1043 (6th Cir. 1975), for the proposition that where a party only shows that many possible factors may have caused alleged damages, the trial court may grant summary judgment against the party. This reliance is misplaced because
 
 U. S. Fibers
 
 concerned the standard for a Rule 41(b) involuntary dismissal. A Rule 41(b) motion is granted only after the plaintiff has a full opportunity to present its evidence at trial, Fed.R.Civ.P. 41(b), unlike a Rule 56(b) motion for summary judgment which is granted before a full trial, Fed.R. Clv.P. 56(b).
 
 Compare Bach v. Friden Calculating Mach. Co.,
 
 148 F.2d 407, 409 (6th Cir. 1945) (“ei motion to dismiss [under Rule 41(b) ] at the conclusion of plaintiffs evidence should be overruled if, in the testimony which has been introduced there is substantial evidence favoring the facts of plaintiffs case and this though there is evidence also opposing such substantial evidence and conflicting therewith”)
 
 and Simpson v. United States,
 
 454 F.2d 691, 692 (6th Cir. 1972)
 
 with United States v. Articles of Device ... Diapuise,
 
 527 F.2d 1008, 1011 (6th Cir. 1976) (“the district court’s consideration of the preponderance of the evidence in ruling on .., summary judgment was erroneous ... the district court should have required the party to bear the burden of clearly establishing the nonexistence of any genuine issue of fact material to a judgment in his favor”).
 

 [8]
 

 . The district court relied on
 
 Arrow Sheet Metal Works, Inc.
 
 v.
 
 Bryant & Detwiler Co.,
 
 338 Mich. 68, 61 N.W.2d 125 (1953), for the proposition that the incorporation of project specifications is only for the purpose of setting standards, not for establishing quantity terms.
 
 Arrow Sheet Metal Works,
 
 however, concerned a conflict between incorporated project specifications and expressed provisions in the contractor-subcontractor agreement. The Michigan Supreme Court concluded that where such a conflict arises the expressed contract provisions control.
 
 Id.
 
 388 Mich. 68, 61 N.W.2d at 129-31. In this case, no such discrepancy arises. The issue here is one of the parties’ intent to incorporate the quantity terms for manhole T’s. As such, it raises a genuine issue of material fact not susceptible to summary judgment.
 

 [9]
 

 . Where the parties raise substantial issues of law or fact as to the existence of a debt, the bankruptcy court does not have jurisdiction over the dispute.
 
 See Cuvrell
 
 v.
 
 Mazur (In re F
 
 
 *911
 
 &
 
 T Contractors, Inc.),
 
 649 F.2d 1229 (6th Cir. 1981).
 

 [10]
 

 . The reasons for the rule that a bankruptcy court does not, without the parties’ consent, have jurisdiction over , a plenary suit are that the bankruptcy court is not designed to provide the formal procedures necessary for a plenary action and that Congress did not intend to grant the bankruptcy court the district court’s power to hear such plenary suits. See
 
 Weidhorn v. Levy,
 
 253 U.S. 268, 272-74, 40 S.Ct. 534, 536, 64 L.Ed. 898 (1920);
 
 Morrison v. Rocco Ferra & Co.,
 
 554 F.2d 290, 296-97 (6th Cir.),
 
 cert. denied,
 
 434 U.S. 925, 98 S.Ct. 405, 54 L.Ed.2d 283 (1977); 2 Collier on Bankruptcy Par. 23.15[7] (14th ed. 1976).