**Diane T. HICKS, etc., Plaintiff,**

v.

**NLO, INC., et al., Defendants.**

**No. C–1–85–1512.**

United States District Court, S.D. Ohio, W.D.

March 27, 1986.

Stanley M. Chesley, Phillip Allen, Cincinnati, Ohio, for plaintiff.

James R. Adams, Kim K. Burke, Cincinnati, Ohio, for defendants.

### OPINION AND ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

SPIEGEL, District Judge:

This matter came on for consideration on the motion for summary judgment filed by defendant Hanford Environmental Health Foundation (HEHF) (doc. 10), plaintiff's memorandum in opposition (doc. 16),[1] and HEHF's reply (doc. 17). Defendant NLO, Inc. (NLO) likewise filed a motion for partial summary judgment (doc. 12). Plaintiff's memorandum in opposition to defendant HEHF's motion for summary judgment (doc. 16) included a response to defendant NLO's motion as well. Defendant NLO also filed a reply brief (doc. 18). Oral argument was heard on February 25, 1986. For the reasons outlined below, we hereby

---

**1.** Attorney Phillip B. Allen attached an affidavit to plaintiff's memorandum in opposition that subsequently was revised (*see* doc. 19).

GRANT both motions for summary judgment.

We recite only those facts necessary to put our ruling in context. Larry Hicks, a thirty-three (33) year-old employee of NLO, woke up on May 20, 1985 feeling weak; he had trouble walking and thought that his heart was beating irregularly. He proceeded immediately to the office of James L. Kegler, M.D., his treating physician and, upon examination, was admitted to Bethesda Hospital, Cardiac Care Unit. Mr. Hicks died shortly after admission. Dr. Kegler notified the Hamilton County Coroner's Office of his patient's sudden death that same evening. He informed the Coroner's Office, among other things, that he believed that heavy metal poisoning, that is, recent workplace exposure to "black oxide," may have caused or contributed to Mr. Hicks' death. Frank P. Cleveland, M.D., Coroner of Hamilton County, Ohio, termed the death of Mr. Hicks a "coroner's case" and ordered that his staff take charge of Mr. Hicks' body to determine the cause of death.

Concern for the safety of his staff, however, prompted Dr. Cleveland to contact Eugene L. Saenger, M.D., of the Eugene L. Saenger Radioisotope Laboratory at the University of Cincinnati.[2] They agreed that Dr. Saenger would perform a whole body radioactive count to determine whether the Coroner's staff could perform an autopsy on Mr. Hicks safely. Dr. Saenger's report led Dr. Cleveland to believe that an autopsy could proceed without incident.

Subsequent to Mr. Hicks' death being declared a coroner's case, Dr. Cleveland's office did receive calls from both defendants. On May 21, 1985, Michael Boback of NLO called and inquired as to whether Mr. Hicks' death had been reported to the Coroner, and, if so, whether an autopsy would be performed. Mr. Boback suggested that the sophisticated equipment available at the United States Uranium Registry, a program administered by HEHF,[3] might be of assistance to the Coroner. Later the same day, Dr. Scott Deitert of the Uranium Registry was in contact with the Coroner's Office, offering the Registry's services. There is no dispute, however, that the Coroner declared Mr. Hicks' death to be a "coroner's case" prior to these telephone calls.

The narrow question that we must decide on a motion for summary judgment is whether there is "no genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). The moving party "has the burden of showing *conclusively* that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.) (emphasis original), *cert. denied*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

We now proceed to consider separately the motions for summary judgment filed by defendants.

### A. Defendant HEHF's Motion for Summary Judgment

Plaintiff herein, the widow of Larry Hicks, has stated three claims for relief in her complaint. Her first cause of action

---

**2.** Neither Dr. Saenger nor the University were sued in this litigation.

**3.** At oral argument, counsel for HEHF explained that it operates the United States Uranium Registry for the United States Department of Energy. HEHF consists of doctors who specialize in radiology; the Uranium Registry is a data bank that collects information about uranium exposure for the purpose of determining correlations between exposure and illness. Evidently it is common for HEHF to contact employees working at facilities such as NLO to inquire if they would be willing to donate their tissue samples for study and research upon their death. While HEHF had visited NLO to solicit donors, no issue exists in this case concerning whether Mr. Hicks volunteered to be part of HEHF's donor program.

names only NLO and is not the subject of either motion for summary judgment now pending before the Court. Accordingly, we will deal with it no further. Plaintiff's second cause of action alleges that defendant HEHF and defendant NLO conspired, as part of a "clandestine and ghoulish operation," to obtain organs and tissue samples from the body of Mr. Hicks without the consent of his widow as required under Ohio law. The third cause of action asks for punitive damages by virtue of the conduct set forth in plaintiff's (first and) second claim(s) for relief.

HEHF moves for summary judgment in its favor on plaintiff's second and third causes of action on the theory that, because it was acting pursuant to the direction of the Coroner, it needed no permission from the widow to perform the tests that it did. Upon consideration and review of the pertinent statutory sections, we believe its position is well-founded.

Ohio Revised Code § 2108.50 provides that "[a]n autopsy or post-mortem examination may be performed upon the body of a deceased person ... if consent has been given ... by ... (B) [t]he decedent's spouse." Section 2108.52 concomitantly provides, however, that "[t]he requirements of section 2108.50 of the Revised Code do not apply to a post-mortem or other examination performed under sections 313.01 to 313.22 of the Revised Code." Chapter 313 is devoted entirely to setting forth the authority of a county coroner. Relevant to the question presented are the following sections:

§ 313.12 [Notify coroner of death by violence or suicide.]

*When any person dies* as a result of criminal or other violent means, or by casualty, or by suicide, or *suddenly when in apparent health, or in any suspicious or unusual manner, the physician called in attendance,* or any member of an ambulance service, emergency squad, or law enforcement agency who obtains knowledge thereof arising from his duties, *shall immediately notify the office of the coroner of the known*

*facts concerning the time, place, manner, and circumstances of such death, and any other information* which is required pursuant to sections 313.01 to 313.22 of the Revised Code. In such cases, if a request is made for cremation, the funeral director called in attendance shall immediately notify the coroner.

§ 313.13 Autopsy.

*The coroner or deputy coroner may go to the dead body and take charge of it. If, in the opinion of the coroner, or, in his absence, in the opinion of the deputy, an autopsy is necessary, such autopsy shall be performed by the coroner, deputy coroner, or pathologists.* A detailed description of the observations written during the progress of such autopsy, or as soon after such autopsy as reasonably possible, and the conclusions drawn therefrom shall be filed in the office of the coroner.

If he takes charge of and decides to perform, or performs, an autopsy on a dead body under this section, the coroner, or in his absence, the deputy coroner, may, under division (E) of section 2108.02 of the Revised Code, waive his paramount right to any donated part of the dead body.

Ohio Revised Code §§ 313.12, 313.13 (emphasis added). All parties agree that, pursuant to the above-quoted portions of the Ohio Revised Code, Dr. Cleveland was acting with statutory authority when he declared Mr. Hicks' death a coroner's case and had an autopsy performed without the permission of plaintiff. They agreed further that Dr. Cleveland, as Coroner, could not be sued for his actions. What we must decide is whether HEHF, in performing tests at Dr. Cleveland's request, is protected under the umbrella of the Coroner's authority.

No reported cases have been decided on this issue, so we are confronted with a question of first impression. Defendant proffers two unreported state court of appeals decisions, attached as exhibits to its motion for summary judgment, and both,

as expected, militate in defendant's favor.[4] From our analysis of the statutes, we think it plain that defendant HEHF, acting as it did at the Coroner's behest, should share the latter's protection from suit. A simple reading of the statute indicates that the General Assembly anticipated that the Coroner be aided by staff members. *See, e.g.,* Ohio Rev.Code § 313.05. It would be nonsensical not to shield these individuals from suit when they are assisting the Coroner in fulfilling his legislative obligations. Correspondingly, no good reason supports a failure to protect similarly those outside agencies with special equipment and expertise that the Coroner may not possess, but may well need, to make an informed pronouncement. That a particular outside agency is not in the county's employ is most certainly an insufficient justification. At the very least, public policy demands that county coroners perform their duties with the modern accoutrements. Coroners serving counties with limited budgets of necessity must rely on outside laboratories and personnel to complete their work. If these laboratories and personnel risk a lawsuit whenever they accede to a coroner's request, their cooperation understandably will cease. Moreover, to force them to ask permission of the family after a coroner has enlisted their aid, as plaintiff suggests, in an affront to a coroner's authority and an unnecessary intrusion on the decedent's relatives.

The instant facts reveal that Dr. Kegler properly reported Mr. Hicks' death to Dr. Cleveland, and that Dr. Cleveland properly declared Mr. Hicks' death to be a coroner's case. Dr. Cleveland's authority to contact and use the facilities of the Saenger Center or defendant HEHF has not been challenged. We rule that defendant HEHF did not violate Ohio Rev.Code § 2108.50 when it performed the studies requested by Dr. Cleveland without first obtaining the permission of plaintiff, Mr. Hicks' widow. Rather, we decide that defendant HEHF was not required to seek Mrs. Hicks' consent because its actions were those of the Coroner's agent, and thus same are protected by the interplay between sections 2108.52 and 313.01 to 313.22 of the Ohio Revised Code.

■ Having so ruled, we conclude that plaintiff's second cause of action cannot stand. Assuming without deciding that a cause of action for conspiracy can be stated under Ohio law, a plaintiff would have to prove an agreement by two or more parties to perform a wrongful act. *See* 16 O.Jur.3d §§ 1–2 at 108–10 (1979). The supporting affidavit of Dr. Cleveland indicates that HEHF performed the acts of which plaintiff complains pursuant to his statutory authority and that no pressure was exerted on him to enlist the aid of HEHF by either HEHF or NLO. Plaintiff offers no contrary evidence, but relies only on her legal theory that no one but *the Coroner* may act without consent. It is the judgment of this Court that no wrongful act took place when HEHF performed as requested, and that any agreement that may have existed between NLO and HEHF[5]

---

4. We questioned counsel for HEHF if he was aware of any unreported cases in plaintiff's favor, to which he responded in the negative. His professional representation to the Court is bolstered by the fact that plaintiff's counsel cited no such cases to support his client's position.

5. For the record, both defendants staunchly maintain that no agreement existed. Aside from her suspicions, plaintiff presents no evidence to the contrary.

This footnote presents the Court with an opportunity to express its concern over the lack of discovery that has taken place with respect to defendant HEHF and how that void should figure in to our ruling in the instant motions for summary judgment. Although raised in his brief in opposition to both defendants' motions for summary judgment, at oral argument plaintiff's counsel did not maintain that further development of the facts was necessary before a decision on the questions presented could issue. Counsel's silence no doubt results from the misunderstanding between him and his associate over whether defendant HEHF had been served with requests for discovery. Had counsel made such an argument, it nevertheless would not have altered our ruling today. Counsel's memorandum pinpointed two areas of inquiry that he considered underdeveloped: whether a conspiracy existed between the defendants and whether they exerted undue pressure on Dr. Cleveland to send out Mr. Hicks' organs and body tissues for detailed study. Dr. Cleveland's affidavit, how-

was not responsible for Dr. Cleveland's decision to term Mr. Hicks' death a coroner's case. We rule, therefore, that plaintiff, as a matter of law, cannot prevail on her claim charging a conspiracy between HEHF and NLO to acquire Mr. Hicks' organs and body tissues as part of a "clandestine and ghoulish operation." Plaintiff's second cause of action thus is dismissed as to defendant HEHF; plaintiff's third cause of action likewise is dismissed as to defendant HEHF as it evidently was pled only as a means to request that punitive damages be awarded on her second cause of action. See *Bishop v. Grdina*, 20 Ohio St.3d 26, 28, 485 N.E.2d 704, 705 (1985) and our discussion thereof in Part B of this Opinion and Order.

### B. Defendant NLO's Motion for Partial Summary Judgment

■ Defendant NLO fully endorsed and joined in defendant HEHF"s motion for summary judgment, and urged the Court to consider the facts that tissue samples went only to HEHF, not NLO, (*see* Affidavit of Michael W. Boback, doc. 13), that tissue samples never were requested by NLO, and that no pressure was exerted by HEHF or NLO on Dr. Cleveland to perform the sophisticated tests or to have HEHF do the testing. For the reasons we dismissed plaintiff's second cause of action as to defendant HEHF, we likewise rule that same should be dismissed as to defendant NLO.

Defendant NLO also moves to strike plaintiff's third cause of action under the authority of *Bishop v. Grdina*, 20 Ohio St.3d 26, 28, 485 N.E.2d 704, 705–06 (1985). In its entirety, plaintiff's third cause of action reads as follows:

21. Plaintiff repeats and realleges in this paragraph each of the allegations set forth in paragraphs 1 through 20 as if set forth verbatim.

22. The foregoing acts and omissions of the Defendants were willful, wanton and reckless, and caused, directly and proximately, the injuries to Plaintiff as aforementioned, all to which Plaintiff as [sic] been damaged in the amount of $5,000,000.00 punitive damages.

In *Bishop*, the Supreme Court of Ohio ruled in this manner:

This court stated in paragraph one of the syllabus in *Richard v. Hunter* (1949), 151 Ohio St. 185 [39 O.O. 24, 85 N.E.2d 109], that "[e]xemplary or punitive damages may not be awarded in the absence of proof of actual damages." This position was recently upheld in *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77 [461 N.E.2d 1273], where the court states at 82. " * * * [W]e believe that punitive damages are highly irregular absent proof of any actual damages."

. . . .

. . . . The purpose of the *Richard* rule is to keep the punitive damages awarded a mere *incident* of the cause of action, rather than let it become a cause of action in and of itself. Punitive damages are awarded as punishment for causing compensable harm and as a deterrent against similar action in the future. No civil cause of action in this state may be maintained simply for punitive damages. *Schumacher v. Siefert* (1930), 35 Ohio App. 405 [172 N.E. 420].

20 Ohio St.3d at 27–28, 485 N.E.2d at 705 (emphasis original). Based on the holding in *Bishop*, we conclude that defendant's position is correct insofar as plaintiff's third cause of action essentially states a claim only for punitive damages. Plaintiff's third cause of action thus should be stricken. But our ruling in no way precludes plaintiff from seeking punitives, along with compensatory damages, with respect to the first cause of action in her complaint against defendant NLO.[6] To simplify matters, we hereby Order plaintiff

ever, provides the Court with sufficient evidence to make its ruling on these matters and plaintiff made no attempt to discredit Dr. Cleveland. For this reason, we are not hesitant in rendering a decision on these motions at this time.

6. As we indicated previously, plaintiff's first cause of action, naming only defendant NLO, is not the subject of these motions.

to file an amended complaint by May 15, 1986, in which she shall state her remaining cause of action against remaining defendant NLO. Should she wish to ask for punitive damages by virtue of the conduct alleged in her remaining cause of action, she is free to do so, but she should not allege a separate cause of action for that purpose.

### C. Conclusion

In conclusion, defendant HEHF's motion for summary judgment is granted. Defendant NLO's motion for partial summary judgment also is granted, but defendant NLO still remains as a party to this litigation. Plaintiff shall filed an amended complaint by May 15, 1986.

SO ORDERED.