Gordon NAGEL, Trustee for Cummins
Label Company Pension Plan, Plaintiff
and Counterdefendant,

v.

FIRST OF MICHIGAN CORPORATION,
Defendant and Counterplaintiff.

No. 4:89–CV–114.

United States District Court,
W.D. Michigan.

March 29, 1991.

Order of Dismissal with
Prejudice and without Costs
April 2, 1991.

Patrick M. Walsh, Lucianne A. Conklin, Walsh, Langeland, Walsh & Bradshaw, Kalamazoo, Mich., for plaintiff and counterdefendant.

Michael P. Coakley, S. Allen Early, III, Michael A. Rataj, Miller, Canfield, Paddock & Stone, Detroit, Mich., for defendant and counterplaintiff.

## OPINION

ENSLEN, District Judge.

This case is before the Court on several motions: 1) defendant's statement of appeal from the United States Magistrate's Opinion and Order dated October 22, 1990; and 2) defendant's motion to dismiss and for summary judgment. Plaintiff Gordon Nagel, trustee for the Cummins Label Company Pension Plan (Plan), alleges violations by defendant, First of Michigan Corporation (FoM), of the Securities Exchange Act, 15 U.S.C. 78j(b), Rule 10b–5, 17 C.F.R. 240.10b–5, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961 et seq.[1] In response to plaintiff's complaint, defendant filed an answer and a counterclaim against Gordon Nagel individually and as trustee for the Plan. Defendant claims that insofar as FoM is found liable for breach of fiduciary duty under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. 1001 et seq., Nagel is liable for contribution, as a result of the breach of his fiduciary duties pursuant to ERISA.[2]

---

1. In an Opinion and Order dated December 3, 1990, the Court dismissed plaintiff's pendent state law claims.

2. Defendant has also filed third party complaints against plaintiff's wife, Wanda Nagel, and Monte Mongreig.

## I. Facts

The Cummins Label Company (Company) Pension Plan became effective in 1976. At the time, Claire Cummins and Gordon Nagel owned the company equally and they continued to do so until Cummins died in 1981. They were both trustees of the Plan.

The Plan is a defined benefit plan governed by ERISA. It has essentially two components: insurance policies and investments. The investments were made from the "Auxiliary Fund" or "Side Fund." It is these investments about which plaintiff complains.

Cummins introduced Nagel to one of FoM's employees, Monte Mongreig, in 1980. On the advice of Cummins, Nagel and Cummins entered into a customer agreement with FoM that March. FoM handled the Plan's investments through that account opened in March 1980. Other than the one introductory meeting, Nagel did not have any contact with Mongreig or FoM until after Cummins's death in November 1981. Except for a yearly review of the Plan's performance, Nagel never discussed the Plan's investments with Cummins, nor did he have any knowledge of the frequency or substance of the meetings and discussions between Cummins and Mongreig.

Prior to Cummins's death, Nagel ran the plant and Cummins handled the sales and administrative duties. With Cummins's death, Nagel became the sole owner of the Company and the sole Plan trustee. Nagel was "an unsophisticated investor who had never before purchased stocks, limited partnerships, or any other security." Plaintiff's Brief in Opposition at 4. However, Nagel was a member of an investment club.

For a time after Cummins's death, Gordon Nagel was the sole trustee of the Plan. In January 1982, plaintiff's wife, Wanda Nagel, was appointed to and accepted responsibility as Trustee of the Plan.

The trustees mailed an annual check to the FoM account and FoM invested the money. Plaintiff freely admits that both Nagel and his wife "relied exclusively upon FoM's recommendations and advice."

Brief in Opposition at 4. In the early years of the agreement with FoM, Nagel remembers telling Mongreig that he and Cummins did not have the investment expertise that FoM and Mongreig did and that it was their "bailiwick." G. Nagel's dep. at 67. Nagel states that he told Mongreig that he would send a check to FoM for the Company's annual contribution to the Plan and FoM was to invest it. FoM accepted the checks and invested them from the time of Cummins death until the account was closed in 1987.

Nagel recalls approximately three other meetings with Mongreig. Nagel testifies that he did nothing to monitor or supervise the investments made in the Pension Plan account. He states that he relied completely on the expertise of FoM. He recalls receiving statements on the account, but always filed them away without review or analysis.

Although defendant has not demonstrated that it ever conveyed to plaintiff that there had been a loss or decline in principal, there are indications that Nagel had notice that at least some of the investments of the Plan's funds were not doing well. A First of America internal memo, dated July 26, 1985, reflects Nagel's knowledge in 1985 that some of the Plan's investments had declined in value. In addition, a worksheet prepared for the Plan's actuary, Improved Funding Techniques, Inc., shows that the Enex and Damson investments had a significant decline in value. In 1986, plaintiff apparently made a decision to move the assets from FoM to First of America. In August 1986, Nagel signed an investment agency agreement with First of America. Nagel entered the agreement because First of America wanted to sell the investments as they were not appropriate for a Pension Plan. However, the investments were not sold in 1986 and the account was closed in 1987.

Nagel alleges that in January 1987, he first learned there were insufficient assets in the FoM account in order to cover one employee's right to $50,745.00 cash distribution. The long-term employee had retired and requested liquidation of enough

assets to pay his benefits under the Plan. Plaintiff filed its complaint in this Court on October 23, 1989.

## II. Appeal from the Magistrate's Opinion and Order

Defendant appeals from the magistrate's October 22, 1990 Opinion and Order insofar as it grants plaintiff's motion to compel certain discovery. Defendant objects to the portions of the Opinion and Order which require defendant to provide: 1) all available information of prior lawsuits filed against FoM after 1982, including any correspondence between defendant and the parties; 2) all compliance department reports and communications pertaining to the Kalamazoo office for the years 1981–1988 and certain other compliance reports involving the compliance department of FoM; and 3) employee compensation manuals for each level of employee of FoM.

Pursuant to statute, this Court may reconsider any pretrial matter "where it has been shown that the magistrate's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A) (1988); see also Federal Rules of Civil Procedure 72(a) (district court shall modify or set aside any portion of magistrate's order on a non-dispositive matter found to be clearly erroneous or contrary to law). "If the motion would not dispose of a claim or defense, the magistrate may enter a final decision reviewable only for clear error." 7 J. Moore, J. Lucas & K. Sinclair, Moore's Federal Practice § 72.02[3], at 72–13 (1990). In reviewing a challenge to the magistrate's order, the Court must give "considerable deference" to the order. Id. § 72.03[7.–3], at 72–42.

■ Defendant has not demonstrated that the magistrate's Order is clearly erroneous or contrary to law as it applies to any of the discovery authorized by the Order. Defendant argues that I should limit discovery of all available information of prior lawsuits during the eight year period because it is "unreasonably cumulative or duplicative, unduly burdensome and prejudicial to First of Michigan." Brief in Support at 2. The magistrate found the information sought to be discovered relevant and necessary for plaintiff to sustain its RICO burden of demonstrating an approved scheme to defraud involving a number of transactions. Merely because courts have limited similar discovery requests in other cases does not mean that it is contrary to law not to do so here. Certainly defendant keeps records of such complaints and related correspondence and its production is less burdensome for defendant than it would be for plaintiff, if indeed it would even be possible. Plaintiff has learned of six apparently related prior lawsuits through contacts and the news media, but if there have been additional lawsuits, they may be more relevant to the burden plaintiff must sustain.

■ Defendant also objects to the order to produce employee compensation manuals because they are overreaching and irrelevant. The magistrate found that they are relevant to plaintiff's RICO claim, pursuant to which plaintiff must prove that defendant profited from its scheme to defraud. Plaintiff believes that defendant's compensation manuals will show excessive incentives, commissions and bonuses for the sale of the securities in this case. Plaintiff argues, and defendant does not dispute, that such information is not available from the monthly statements defendant has produced. I find that the magistrate's order to produce such documents is not clearly erroneous or contrary to law.

Finally, defendant argues that it should not be forced to produce records of its compliance with government and industry rules and regulations. Plaintiff requests this information to support its claim that defendant was negligent in supervising its registered representatives. I have since dismissed plaintiff's negligence claim, count VI, as a pendent state law claim over which this Court should not exercise jurisdiction. For this reason, I find that discovery of the compliance records is no longer relevant to the claims at issue in this case.

## III. Defendant's motion to dismiss and for summary judgment

Defendant does not specify the Rule or the authority for the court action it re-

quests in this motion. Under the Federal Rules of Civil Procedure, the standard for a motion to dismiss differs from that of a motion for summary judgment. Because defendant has relied on numerous exhibits which it has attached to its motion and because plaintiff has also relied on many exhibits beyond the pleadings, the Court will determine this motion according to the Rule 56 standard for summary judgment. *See* Fed.R.Civ.P. 56(f).

## A. Standard

In reviewing a motion for summary judgment, this Court should only consider the narrow questions of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ. Proc. 56(c). On a Rule 56 motion, the Court cannot resolve issues of fact, but is empowered to determine only whether there are issues in dispute to be decided in a trial on the merits. *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987); *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *see Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1310 (6th Cir.1989).

A motion for summary judgment requires this Court to view " 'inferences to be drawn from the underlying facts ... in the light most favorable to the party opposing the motion.' " *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)), *quoted in Historic Preservation Guild v. Burnley*, 896 F.2d 985, 993 (6th Cir.1989). The opponent, however, has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a *'genuine issue for trial.'* " *Historic Preserva-*

*tion*, 896 F.2d at 993 (quoting *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356).

As the Sixth Circuit has recognized and wholeheartedly supported, recent Supreme Court decisions have encouraged the granting of summary judgments. *Historic Preservation*, 896 F.2d at 993 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Courts have noted that the summary judgment motion may be an "appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir.1989) (quoting *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555). Consistent with the concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] positions will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. "Mere allegations do not suffice." *Cloverdale*, 869 F.2d at 937. "[T]he party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." *Id.*

## B. Discussion

Defendant addresses plaintiff's claims individually and sets forth various reasons why they should be dismissed or the Court should rule in defendant's favor as a matter of law.

### 1. Claims under section 10(b) and rule 10b–5

Defendant's first argument is that plaintiff's claims of fraud brought under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, should be "dismissed as a matter of law." Brief in Support at 9.

#### a. Statute of limitations

Defendant first argues that plaintiff's claims under section 10(b) of the Securities Exchange Act and rule 10b–5 are time barred by the statute of limitations. The Act does not provide a limitations period and the Supreme Court has not ruled on the period applicable to section 10(b) and

rule 10b–5 claims.[3] Defendant argues that, in the interest of federal uniformity, the Court should apply the limitations period applicable to actions brought under section 13—claims must be filed within one year after the plaintiff knew of or should have known of the facts underlying its claim, and, in no event, more than three years after the date of the sale. Plaintiff argues, however, that pursuant to Sixth Circuit precedent, the Court should apply the six-year statute of limitations rule applicable under state law to actions for fraud.

Generally, when a federal statute is silent on the issue, federal courts look to analogous state law to determine the applicable statute of limitations. However, under certain circumstances, "state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law." *Del Costello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 161, 103 S.Ct. 2281, 2289, 76 L.Ed.2d 476 (1983). Because the states do not establish their claim-filing deadlines with national interests in mind, instances exist where application of a state rule will frustrate national policies and goals. *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977). As a result, a significant number of cases have arisen in which the Supreme Court has determined that the applicable statute of limitations should not be drawn from that governing the state law most analogous to the federal claim asserted. *See e.g., Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 149, 107 S.Ct. 2759, 2763, 97 L.Ed.2d 121 (1987) (Clayton Act statute of limitations should apply to civil RICO actions to provide for uniformity); *Wilson v. Garcia*, 471 U.S. 261, 261, 105 S.Ct. 1938, 1938, 85 L.Ed.2d 254 (1985) (all claims under 42 U.S.C. § 1988 should be governed by state statute of limitations applicable to personal injury torts).

The circuits are split as to the appropriate source for the statute of limitations for section 10(b) claims under the Securities Exchange Act. Subsequent to the Supreme Court's decision in *Malley–Duff*, the Third Circuit held that all section 10(b) claims should be governed by the statute of limitations applicable to section 13 claims under the Act. *In re Data Access Sys. Secs. Litig.*, 843 F.2d 1537, 1550 (3d Cir. 1988), *cert. denied*, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103. In *Short v. Belleville Shoe Mgf. Co.*, 908 F.2d 1385 (7th Cir.1990), the Seventh Circuit followed the Third Circuit's rationale. Four other circuits that have recently addressed this issue, however, have not found reason to sway from the general rule of applying a state statute of limitations that is analogous to the federal claim asserted. *See e.g., Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 127 (1st Cir.1987); *Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir.1988); *Nesbit v. McNeil*, 896 F.2d 380, 384 (9th Cir.), *reh'g denied*, 1990 WL 11703, 1990 US App LEXIS 7906 (1990); *Smith v. Duff & Phelps, Inc.*, 891 F.2d 1567, 1569–70 (11th Cir.), *reh'g denied*, 904 F.2d 712 (1990) (en banc).

The Sixth Circuit has not determined the appropriate statute of limitations applicable in section 10(b) claims since 1986. *Silverberg v. Thomson McKinnon Secs., Inc.*, 787 F.2d 1079 (6th Cir.1986). In *Silverberg*, the court of appeals stated that "the law in this circuit is settled" with respect to the choice of statute of limitations law applicable to 10(b) claims. *Id.* at 1082. Without even discussing the alternative of choosing a uniform limitations period under state law or an analogous federal law, the court held that the limitations period for claims of fraud under state law should apply to section 10(b) claims of fraud under the Securities Exchange Act.

I find no reason to deviate from the rule established by the Sixth Circuit. The recent Supreme Court decisions cited *supra* do not dictate a reassessment. Moreover, plaintiff in this case has relied on the circuit's established law in filing this complaint and I am reluctant to mandate retro-

---

**3.** The Supreme Court recently granted *certiorari* in *Lampf Pleva Lipkind Prupis & Petigrow v. Gilbertson et al.*, — U.S. —, 111 S.Ct. 242, 112 L.Ed.2d 201 (1990), to resolve the conflict in the circuits regarding the applicable statute of limitations for section 10(b) actions.

active application of a rule that would bar the plaintiff's claim. *Nesbit,* 896 F.2d at 384.

The parties agree that if an analogous state law should provide the applicable statute of limitations, the Sixth Circuit has ruled that the appropriate statute for claims of securities fraud under section 10(b) is Michigan's six-year statute of limitations for fraud, as set forth in Mich. Comp.Laws Ann. § 600.5813. *IDS Progressive Fund, Inc. v. First of Michigan Corp.,* 533 F.2d 340, 344 (6th Cir.1976). The parties do not agree, however, at what time the statute began to run in this case.

■ Although state law governs the length of the filing period, federal law determines at what point the statute of limitations begins to run. *Silverberg,* 787 F.2d at 1082 (citing *Gaudin v. KDI Corp.,* 576 F.2d 708, 712 (6th Cir.1978)). The Sixth Circuit has adopted the rule that a section 10(b) action accrues when " 'the fraud is or should have been discovered.' " *Gaudin v. KDI Corp.,* 576 F.2d 708, 712 (6th Cir. 1978). The fraud should have been discovered at the time when plaintiff, exercising reasonable diligence, "could and should have discovered it." *Id.* The determination is made from surrounding circumstances, such as drastic change in the value of the investments, no listing on the stock exchange, and the existence of other pending lawsuits alleging securities violations. *Id.* at 712–24.

■ Defendant has not demonstrated that plaintiff knew or should have known of the fraud prior to October 1983, which is six years before the complaint was filed. Defendant simply states that any purchase made prior to this date is time barred because plaintiff is alleging fraud in the purchase of the stock. Defendant has not presented any proof, however, that plaintiff was on notice and should have investigated whether fraud was occurring at the time of the purchase.

I find that plaintiff's section 10(b) and rule 10b–5 claims are not barred by the statute of limitations.

### b. Requisite Elements

Defendant next argues that plaintiff's section 10(b) and rule 10b–5 claims should be "dismissed" because plaintiff cannot prove the requisite elements.

■ Section 10(b) makes it "unlawful for any person ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j. The Commission enacted Rule 10b–5 which makes it unlawful, "in connection with the purchase or sale of any security" for:

> any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national security exchange (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary ... in order to make the statements made ... not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

17 C.F.R. § 240.10b–5. Plaintiff must generally satisfy seven elements in order to establish a prima facie claim for relief under section 10(b): 1) the use of interstate commerce, the mail, or any facilities of one of the national securities exchanges, 2) to manipulate, deceive, or contrive, 3) in relation to, 4) the sale or purchase, 5) of securities, 6) which causes, 7) damages. *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1026 (6th Cir.1979). The failure to disclose information alone does not constitute fraud under section 10(b). An omission is only actionable to the extent that the failure to disclose renders the information revealed a "half-truth." *Howing Co. v. Nationwide Corp.,* 826 F.2d 1470, 1480–81 (6th Cir.1987).

#### i. *Misrepresentations*

■ Defendant first argues that proof of fraud or deceit is lacking because Nagel cannot recall specific misrepresentations made to him regarding the investments

that "he" made through FoM. First, Nagel did not make the investments, but rather the Plan, as represented and authorized by Nagel, made the investments. Second, as I ruled in my December 8, 1990 Opinion, the "plaintiff is the Plan, with Gordon Nagel, in his capacity as the Plan's trustee, its representative." Opinion at 3. Accordingly, all statements made by agents or employees of FoM to any agent, representative, or trustee of the Plan are relevant as to the issue of misrepresentations. Plaintiff's evidence regarding FoM's misleading statements allegedly made to Wanda Nagel, the other trustee of the Plan, and Michelle Minich, an employee of the company who collected information for the Plan's actuary and accountant, establish a material factual dispute as to the existence of misrepresentations or material omissions.

### ii. Scienter

■ Defendant argues that because Nagel cannot recall specific statements made to him, he cannot prove that any intentional misleading or untrue statements were made. In order to establish liability for securities fraud, plaintiff must show, in addition to all the other elements, that FoM made misrepresentations or statements made misleading by omissions made with an intent to defraud or with recklessness indicating an extreme departure from standards of ordinary care. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 215, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668 (1976). Again, Wanda Nagel and Michelle Minich have submitted evidence of material, misleading statements allegedly made to them regarding the Plan's investments by FoM employees or agents. Plaintiff claims that "the statements were all made knowingly or with reckless disregard for the truth or falsity." Plaintiff has satisfied its burden of demonstrating at least an issue of fact as to the element of intent.

### iii. Reliance

Defendant also argues that plaintiff has demonstrated no evidence to support a finding that Nagel, as the Trustee's representative, relied on the alleged misrepresentations when authorizing the investment decisions. The element of reliance is not written into the statute or the rule. Courts require a showing of reliance in so far as it is necessary to prove that the statements or lack of information were material. When plaintiff alleges material omissions, the requirement of reliance is irrelevant. It would be impossible to prove that an investor relied on what was not told to him. In the case of omitted statements, what is really at issue is how the omitted fact/s, if made known to the investor at the time of the critical decision, would have affected the investor's decision. In *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976), the Supreme Court held that the standard of materiality is satisfied by "a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." The Court warned that a determination of the materiality of alleged omissions "requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact." *Id.* at 450, 96 S.Ct. at 2133.

Defendant argues that there is no possible way Nagel can show materiality because he has no recollection of statements made to him. This argument rests on the assumption that Nagel is the purchaser or seller and thus, only statements made directly to him are material. Nagel authorized the purchase and other investment decisions, but the funds belonged to the Plan and the investments were for the benefit of the Plan. The opinions and feedback of others who had contact with FoM on behalf of the Plan may have influenced Nagel and may be material. Support for this view is the language in the Rule itself: it is unlawful for a person, "directly or indirectly," to deceive or mislead others.

■ Even if Nagel could show that misrepresentations or material omissions were made, defendant claims, he could not demonstrate that his reliance on them was rea-

sonable. Defendant has produced proof that Nagel received prospectuses on each investment. In light of the information contained in those prospectuses, defendant asserts that it would have been unreasonable for plaintiff to rely on the alleged misrepresentations.

I do not subscribe to defendant's view. Defendant seems to be arguing that no matter what an agent says or doesn't say concerning the investments, plaintiff, in making investment decisions, is not legally entitled to give any credence to such communications and must rely solely on the official prospectuses provided. Such a view would allow an agent's sales and investment advice to go unmonitored and would give agents unfettered discretion in their dealings with customers regarding investments.

#### iv. Causation

■ Finally, defendant argues that plaintiff cannot prove causation. Defendant alleges: "the decline in the value of plaintiff's investments was due to market forces and was not caused by any alleged deception by FoM." Plaintiff asserts that the Plan would never have been invested in gas and oil limited partnerships had it not been for its reliance upon FoM. Accordingly, plaintiff claims, FoM's material misrepresentations and omissions caused its economic loss.

In *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), the Supreme Court held that positive proof of reliance is not required as long as plaintiff demonstrates that material misrepresentations were made, "in the sense that a reasonable investor might have considered them important in the making of this decision." However, most courts hold that defendant can rebut this showing by demonstrating that plaintiff would have made the same decisions even with truthful and honest representations and full disclosure. *E.g., Shores v. Sklar,* 647 F.2d 462 (5th Cir.1981) (en banc), *cert. denied,* 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983).

Defendant has not made any showing on the market factors that allegedly influenced plaintiff's decisions to invest as it did. Moreover, defendant has not presented any evidence regarding the market forces that allegedly caused the decline in the value of the investments. For these reasons, I find that plaintiff has shown a dispute of material fact as to the issue of causation.

### 2. RICO Claims

Defendant sets forth two arguments for dismissing all of plaintiff's RICO claims.

#### a. Statute of limitations

■ The parties agree that the statute of limitations for civil RICO claims is four years. As discussed in my Opinion dated December 3, 1990, the statute of limitations begins to run at the time that plaintiff knows of or should know of the injury. Opinion at 20. RICO section 1962, 18 U.S.C. § 1962 (1988), provides that there are four general elements to a valid claim: 1) the conducting of; 2) an enterprise; 3) through a pattern; 4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). For a private plaintiff, an additional element is required: injury to the plaintiff's business or property. 18 U.S.C. § 1964(c) (1988). One problem that may arise is that plaintiff suffers an injury, but does not learn until years later that it occurred as a result of a pattern of racketeering activity. The four year discovery rule does not begin to run until all the elements necessary to establish a RICO claim exist. *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1102 (2d Cir.), *cert. denied sub nom. Soifer v. Bankers Trust Co.,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1988); *Keystone Ins. Co. v. Houghton,* 863 F.2d 1125, 1130 (3d Cir.1988).

Defendant argues that, because Nagel was given the prospectuses at the time of purchase, dating back as early as 1982, and because in July 1985, there is evidence that Nagel knew some of the investments had done very well while others had done poorly, all of plaintiff's RICO claims are time barred. Plaintiff asserts that the injury

did not occur until January 1987 when it learned that there were insufficient funds to liquidate one of its employees benefit packages. Given that in 1985, Nagel believed some of the investments were "doing very well," and defendant does not dispute this belief, I find that plaintiff has demonstrated a genuine issue of fact as to the time when plaintiff should have known of the injury.

### b. Causation

■ Defendant also argues that plaintiff's claims under RICO "fail to state a claim upon which relief may be granted." I addressed this argument in responding to defendant's prior motion to dismiss and rejected it as a matter of law. *See* Opinion, December 3, 1990, at 21–29. Plaintiff urges the Court not to address defendant's motion on these claims as a motion for summary judgment. In reply, defendant argues that it "has moved for summary judgment of the RICO § 1962(a) and (b) claims alleged in count III of the amended claims."

Federal Rules of Civil Procedure 12 provides that if evidence beyond the pleadings is presented to and considered by the Court, the Court may treat a 12(b)(6) motion as a motion for summary judgment pursuant to Rule 56, as long as one requirement is met: "all parties shall be given reasonable opportunity to present all material pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12. In this case, plaintiff has been given a reasonable opportunity to respond and present evidence relevant to the claims presented by defendant in this part of its motion. I will therefore treat this part of defendant's motion as a motion for summary judgment pursuant to Rule 56.

Plaintiff states that the Court should not grant summary judgment as to its standing to assert the RICO claims at this time because it has not had the opportunity to complete discovery on issues relevant to its RICO claims. To support this contention, plaintiff cites its pending motion to compel discovery, the appeal of which I addressed *supra.*

Rule 56(f) authorizes the Court to refuse application for a judgment or to order a continuance to permit "affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just" when an opposing party shows by affidavit that the facts necessary to justify its opposition are unavailable. Fed.R.Civ.P. 56(f). The Sixth Circuit views this as a discretionary power and the standard of review is abuse of discretion. *Glen Eden Hosp., Inc. v. Blue Cross & Blue Shield, Inc.,* 740 F.2d 423, 428 (6th Cir. 1984). If a party has not yet had the opportunity to produce evidence to support its position, the trial court is not in error to deny the motion for summary judgment. *Serv. Hosp., Nursing Home, and Public Employees Union, Local No. 47 v. Commercial Property Servs., Inc.,* 755 F.2d 499, 507 (6th Cir.), *cert. denied,* 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985). If the moving party has not been forthcoming with discovery requests and the opposing party is seeking further information, the Court should not grant summary judgment. *Glen Eden,* 740 F.2d at 428.

In this case, plaintiff claims as proof of its efforts to seek further information its motion to compel discovery, which it filed September 6, 1990. The magistrate granted the motion to compel as it related to certain of plaintiff's RICO claims, and defendant appealed. I have only today affirmed the magistrate's order as to the RICO discovery. In defending against the motion for summary judgment as to its RICO claims, plaintiff has not had the benefit of the evidence it expects to obtain from this discovery. For this reason, I deny without prejudice defendant's motion for summary judgment as to plaintiff's RICO claims.

### C. Conclusion

Plaintiff has stipulated to the dismissal of its charges of "churning" under the Securities Exchange Act. As stated previously, plaintiff's claims under state law have been dismissed in a prior Opinion and Order. *See* Opinion & Order, December 3, 1990. I deny defendant's motion for summary judgment as to plaintiff's count I

claims under the Securities Exchange Act and Rule 10b–5. I deny without prejudice to a future summary judgment motion, defendant's motion as to plaintiff's count III claims under RICO.

### ORDER OF DISMISSAL WITH PREJUDICE AND WITHOUT COSTS

Upon reading and filing the Stipulation For Dismissal With Prejudice and Without Costs, the Court being fully advised in the premises, Now Therefore

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that this action shall be and hereby are dismissed with prejudice and without costs to any party.